1  Kolin C. Tang (SBN 279834)
   (ktang@sfmslaw.com)
2  SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
   201 Filbert Street, Suite 201
3  San Francisco, CA 94133
   Telephone: (415) 429-5272
4  Facsimile: (866) 300-7367

5  (Additional Counsel on Signature Page)

6
   *Attorneys for Plaintiff, Kenneth Sciacca,*
7  *On Behalf of Himself and*
   *All Others Similarly Situated*

8
9              IN THE UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                     SAN JOSE DIVISION

12

13  KENNETH SCIACCA, on behalf of          Case No. 5:18-cv-3312-LHK
    himself and all others similarly situated,
14
                                           **PLAINTIFF'S OPPOSITION TO**
15                Plaintiff,               **DEFENDANT'S MOTION TO**
                                           **DISMISS AMENDED COMPLAINT**
16        vs.
                                           Date:      January 17, 2019
17  APPLE, INC.,                           Time:      1:30 p.m.
                                           Dept.:     Courtroom 8 – 4th Floor
18                Defendant.               Judge:     Hon. Lucy H. Koh

19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

# **TABLE OF CONTENTS**

Table of Authorities ..................................................................................................... ii

FACTUAL BACKGROUND .......................................................................................... 1

LEGAL STANDARD ....................................................................................................... 3

ARGUMENT ...................................................................................................................... 4

A.    Plaintiff's Fraud-Based Claims Under The UCL (Count I) And CLRA (Count II)
       Are Well-Pled And Should Not Be Dismissed ...................................................... 4

      1.    Plaintiff Has Stated A Claim Arising Out Of Defendant's Partial
              Representations ................................................................................................. 4

      2.    Plaintiff's Allegations Establish That The Defect Is A Material Fact ................... 6

      3.    Plaintiff's Allegations Establish Defendant's Knowledge Of The Defect ........... 10

      4.    Plaintiff Has Established A Safety Issue ............................................................. 12

      5.    Even If The Defect Did Not Pose A Safety Issue, Apple Still Had
              A Duty To Disclose The Defect ......................................................................... 14

B.    Plaintiff Has Stated A Claim Under The UCL ............................................................ 16

      1.    The "Unfair" Prong ........................................................................................... 17

      2.    The "Unlawful" And "Fraudulent" Prongs ......................................................... 18

C.    Plaintiff Has Stated A Claim For Breach Of Express Warranty ...................................... 19

      1.    Applicability Of Apple's Limited Warranty To Plaintiff ...................................... 19

      2.    Plaintiff Has Pled A Defect Covered By Apple's Warranty ................................. 20

D.    Plaintiff Has Stated A Claim Under The Magnuson-Moss Warranty Act ........................ 22

E.    Plaintiff Has Stated A Claim For Unjust Enrichment Under Colorado Law ................... 22

F.    Plaintiff Has Standing To Seek Injunctive Relief ......................................................... 24

CONCLUSION .................................................................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

## Cases

3

*AmerisourceBergen Corp. v. Dialysist West, Inc.*,
465 F. 3d 946 (9th Cir. 2006) ................................................................................. 25

4

*Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*,
5   2018 WL 1805516 (N.D. Cal. Apr. 16, 2018) ........................................................ 18

6   *Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................. 3
7

8   *Baba v. Hewlett-Packard Co., No. C*,
2011 WL 317650 (N.D. Cal. Jan. 28, 2011) ...................................................... 10-11

9

*Bachus v. Apishapa Land and Cattle Co.*,
10   615 P. 2d 42 (Colo. App. 1980) ............................................................................. 24

11   *Backhaut v. Apple, Inc.*,
74 F. Supp. 3d 1033 (N.D. Cal. 2014) .................................................................... 18
12

13   *Ball Dynamics Int'l, LLC v. Saunders*,
2016 WL 10859782 (D. Colo. 2016) ................................................................. 23, 24

14   *Bardin v. Daimlerchrysler Corp.*,
136 Cal. App. 4th 1255 (2006) ................................................................................. 9
15

16   *Berenblat v. Apple, Inc.*,
2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) .......................................................... 10

17   *Beyer v. Symantec Corp.*,
2018 WL 4584217 (N.D. Cal. Sept. 21, 2018) ....................................................... 15
18

19   *Butler v. Porsche Cars N. Am., Inc*,
2016 WL 4474630 (N.D. Cal. Aug. 25, 2016) ................................................... 12, 18

20   *Cal-Tech Comm'ns, Inc. v. L.A. Cellular Tel. Co.*,
21   20 Cal. 4th 163 (1999) ................................................................................... 16, 18, 19

22   *Cholakyan v. Mercedes–Benz USA, LLC*,
796 F.Supp.2d 1220 (C.D.Cal.2011) ............................................................. 13, 21, 22

23

*Clark v. LG Elecs. USA, Inc.*,
24   2013 WL 5816410 (S.D. Cal. 2013) ....................................................................... 20

25   *Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ................................................................................. 22

26

*Collins v. eMachines, Inc.*,
27   202 Cal.App. 4th 249 (2011) .............................................................................. 4, 15

28

*Daugherty [v. Am. Honda Motor Co.*,
  144 Cal.App.4th 824 (2006) ............................................................................... 14

*Davidson v. Apple, Inc.*,
  2017 WL 976048 (N.D. Cal. Mar. 14, 2017) ............................................. 5, 20, 25

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ............................................................................. 25

*Davis v. HSBC Bank Nevada, N.C.*,
  691 F.3d 1152 (9th Cir. 2012) ........................................................................... 16

*Drum v. San Fernando Valley Bar Ass'n*,
  182 Cal.App.4th 247 (2010) ......................................................................... 17, 18

*Elias v. Hewlett-Packard Co.*,
  903 F. Supp. 2d 843 (N.D. Cal. 2012) ................................................................ 18

*Elias v. Hewlett-Packard Co.*,("*Elias II*"),
  950 F. Supp. 2d 1123 (N.D. Cal. 2013) ......................................................... 13, 14

*Elias v. Hewlett-Packard Co.*,
  2014 WL 493034 (N.D. Cal. Feb. 5, 2014) ........................................................... 8

*Falk v. Gen. Motors Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) ...................................................... 8, 9, 11, 14

*Ferrari v. Nat. Partner, Inc.*,
  2017 WL 76905 (N.D. Cal. Jan. 9, 2017) ............................................................. 9

*GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*,
  2016 WL 6562064 (C.D. Cal. Apr. 21, 2016) ........................................................ 5

*Hardt v. Chrysler Grp. LLC*,
  2015 WL 12683965 (C. D. Cal. 2015) ................................................................. 21

*Herremans v. BMW of N. Am., LLC, No. CV 14-02363 MMM PJWX*,
  2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) ......................................................... 11

*Herskowitz v. Apple Inc.*,
  940 F. Supp. 2d 1131 (N.D. Cal. 2013) ......................................................... 17, 18

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) ............................................................................. 15

*In re Adobe Sys., Inc. Privacy Litig.*,
  66 F. Supp. 3d 1197 (N.D. Cal. 2014) ......................................................... 16, 17, 18

*In re Anthem, Inc. Data Breach Litig.*,
  162 F. Supp. 3d 953 (N.D. Cal. 2016) ................................................................ 18

*In re Apple In-App Purchase Litig.*,
  855 F. Supp. 2d 1030 (N.D. Cal. 2012) ............................................................ 5, 6

*In re MyFord Touch Consumer Litig.*,
  46 F. Supp. 3d 936 (N.D. Cal. 2014) ................................................. 12

*In re NJOY, Inc. Consumer Class Action Litig.*,
  2015 WL 12732461 (C.D. Cal. May 27, 2015) ...................................... 6

*In re Toyota Motor Corp.*,
  790 F. Supp. 2d 1152 (C.D. Cal. 2011) .............................................. 8

*In re Yahoo Mail Litig.*,
  7 F. Supp. 3d 1016 (N.D. Cal. 2014) ................................................. 3

*Interbank Invests., LLC v. Eagle River Water & San. Dist.*,
  77 P. 3d 814 (Colo. App. 2003) ...................................................... 23

*Ji Chang Son v. Tesla, Inc.*,
  2017 WL 5640545, n. 4 (C.D. Cal. 2017) ......................................... 22

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal.4th 1134 (2003) .......................................................... 16, 17

*Kowalsky v. Hewlett-Packard Co.*,
  2011 WL 3501715 (N.D. Cal. Aug. 10, 2011) ...................................... 11

*Lewand v. Mazda Motor of Am., Inc.*,
  2017 WL 8117764 (C.D. Cal. Nov. 8, 2017) ........................................ 18

*LiMandri v. Judkins*,
  52 Cal. App. 4th 326 (1997) ....................................................... 15

*Manzarek v. St. Paul Fire & Marin Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008) ....................................................... 3

*Marchante v. Sony Corp. of Am., Inc.*,
  801 F. Supp. 2d 1013 (S.D. Cal. 2011) ............................................. 19

*Markel Am. Ins. Co. v. Pac. Asian Enterprises, Inc.*,
  2008 WL 2951277 (N.D. Cal. July 28, 2008) ....................................... 6

*McCabe v. Am. Honda Motor Co.*,
  100 Cal. App. 4th 1111 (Cal. Ct. App. 2002) ..................................... 20

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ........................................................ 3

*Oestreicher v. Alienware Corp.*,
  544 F. Supp. 2d 964 (N.D. Cal. 2008) .............................................. 11

*Palmer v. Apple Inc.*,
  2016 WL 1535087 (N.D. Cal. Apr. 15, 2016) ....................................... 18

*Philips v. Ford Motor Co.*,
  2015 WL 4111448 (N.D. Cal. July 7, 2015) .......................................... 7

*Powers v. Emcon Assocs., Inc.*,
   2016 WL 1111708 (D. Colo. 2016) ........................................................ 24

*Provencio v. Armor Holdings, Inc.*,
   2007 WL 2814650 (E.D. Cal. Sept. 25, 2007) ........................................ 6

*Punian v. Gillette Co. ("Punian I")*,
   2015 WL 4967535 (N.D. Cal. Aug. 20, 2015) ........................................ 11

*Punian v. Gillette Co. ("Punian II")*,
   2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ............................. 6, 7, 8, 9

*Rasmussen v. Apple Inc.*,
   27 F. Supp. 3d 1027 (N.D. Cal. 2014) ................................................ 4, 6

*Robert W. Thomas and Anne McDonald Thomas Revocable Trust v. Inland Pacific Colorado, LLC*,
   2012 WL 2190852 (D. Colo. 2012) ...................................................... 24

*Rupert v. Bond*,
   68 F. Supp. 3d 1142 (N.D. Cal. 2014) ................................................. 10

*Rutledge v. Hewlett-Packard Co.*,
   238 Cal. App. 4th 1164 (2015) ...................................................... 14, 15

*Smith v. Ford Motor Co.*,
   749 F. Supp. 2d 980 (N.D. Cal. 2010) ................................................. 13

*Sterenbuch v. Goss*,
   266 P. 3d 428 (Colo. App. 2011) ........................................................ 23

*Warner Constr. Corp. v. City of Los Angeles*,
   2 Cal.3d 285 (1970)............................................................................. 5

*Weeks v. Google LLC*,
   2018 WL 3933398 (N.D. Cal. Aug. 16, 2018) ...................................... 18

*Weinstat v. Dentsply Int'l, Inc.*,
   180 Cal. App. 4th 1213 (Cal. 2010) .................................................... 19

*West Ridge Group, LLC v. First Trust Co. of Onaga*,
   414 Fed. Appx. 112 (10th Cir. 2011) .................................................. 23

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012)................................................. 11, 13, 14

*Zapata Fonseca v. Goya Foods Inc.*,
   2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ....................................... 14

## Rules

Fed. R. Civ. P. 9(b) ............................................................................ 6, 9

1

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 3

Fed. R. Civ. P. 15(a) ................................................................................................. 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FACTUAL BACKGROUND**

Defendant, Apple Inc. ("Apple" or "Defendant"), designs, manufactures, sells and warrants the Apple Watch, a "smart watch" that—depending on the model—allows consumers to track fitness, download apps, receive text messages, and make phone calls. ¶¶ 23, 29.[1] Apple started selling Apple Watches in April 2015 when it introduced its "First Generation" Watch. ¶ 24. Since then, Apple has introduced three additional Apple Watch series: the Series 1, Series 2, and Series 3 (the "Watch" or "Watches"). ¶¶ 25, 28.[2] All Watches come in a variety of models, with varying specifications and prices (from $249 to $1,399). ¶¶ 26–28. Generally, customers may select between aluminum or stainless-steel cases, "Ion-X glass" or Sapphire crystal screens, and 38mm or 42mm watch faces. *Id.*

From their inception, Apple has marketed the Watches as durable, activity-oriented devices that customers can take anywhere and use for any practical purpose. ¶¶ 29–30. Advertising campaigns for the Series 1, 2, and 3 show various Apple Watch users swimming, hiking, running, climbing, dancing, and surfing. ¶ 32. Statements on the Apple Watch section of Apple.com have similarly extolled the activity-oriented qualities of each Watch series. ¶¶ 30–31. To a reasonable consumer, the implication of these advertisements is clear enough: Apple Watches are durable, activity-ready devices that will perform a variety of functions without issue. In reality, the contrary is true, as the Watches all contain the same defect and/or flaw, which causes the screens on the Watches to crack, shatter, or detach from the body of the Watch (the "Defect"), through no fault of the wearer. ¶ 3. Indeed, the Defect posed and continues to

---

[1] All citations to "¶" or "¶¶" refer to the corresponding paragraphs of Plaintiff's Amended Complaint (Dkt. No. 28).

[2] Apple recently introduced its Series 4 Apple Watch, which became available for purchase in the United States in September 2018.

pose a significant safety hazard to consumers, as the Defect's manifestation has caused Watch wearers to suffer cuts and burns. ¶¶ 9, 45.

Plaintiff, Kenneth Sciacca ("Sciacca" or "Plaintiff"), is a Colorado resident who owns a Series 2 stainless-steel 38mm Apple Watch that he purchased on or about December 1, 2016. ¶ 47. Thereafter, Sciacca used and maintained his Watch as recommended by Apple. ¶ 49. On or about March 9, 2018, the screen on Sciacca's Watch unexpectedly detached from the Watch's body after Sciacca removed the Watch from its charger. ¶ 48. Sciacca took his defective Watch to a local Apple Store. *Id*. Although Sciacca's Watch was in like-new condition, with no scratches on the screen or damage to the body, the Apple employees examined the Watch and informed him the Defect was due to "non-warrantable damage," which would cost $249 to repair. ¶¶ 48–49. Sciacca refused this repair offer, as any repair would still run the risk of future harm as the repaired Watch also would be prone to the same Defect, and Plaintiff was left with a functionally-worthless, high-priced device. ¶ 48.

Sciacca's experience with his Apple Watch is far from unique. A tremendous number of Apple Watch customers have detailed similar problems with the screens of their Series 1, Series 2, and Series 3 Watches on Apple's "Communities" online forums. ¶ 50. Customers have documented numerous instances of Apple Watch screens detaching from the body of their Watches, cracking (usually in a hairline manner around the screen's outer edge), or shattering. Frequently, these issues have occurred mere days or weeks after purchase. ¶¶ 3, 41, 48. Some customers have documented injuries as a result. ¶ 45. With few exceptions, customers reporting these incidents state the screen Defect manifested itself suddenly and was not the result of any misuse on their part. ¶¶ 39–43.

Despite this widespread issue, Apple has refused to admit there is a defect with the Watches and, indeed, has treated customers experiencing the Defect in the same way it treated

Sciacca: with denials and over-priced repair costs. Even when the Defect manifests itself during the one-year Limited Warranty period, Apple refuses to honor its warranties and repeatedly suggests the Defect is merely a result of "accidental damage" by the consumer. ¶ 10. And, although Apple is aware of the Defect in the Watches, it has actively concealed and failed to disclose the Defect to customers prior to, at, or after the time of purchase. ¶ 8.

Plaintiff filed this action on June 4, 2018. On August 10, 2018, Apple moved to dismiss the original Complaint. Plaintiff filed an Amended Class Action Complaint (the "Amended Complaint") on August 31, 2018. On September 28, 2018, Apple moved to dismiss the Amended Complaint (the "Motion").

## **LEGAL STANDARD**

Apple moves to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(6). A district court ruling on a motion to dismiss under Rule 12(b)(6) "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1024 (N.D. Cal. 2014) (citing *Manzarek v. St. Paul Fire & Marin Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)). A claim has the requisite "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To that end, a claim may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001).

## ARGUMENT

### A.  Plaintiff's Fraud-Based Claims Under The UCL (Count I) And CLRA (Count II) Are Well-Pled And Should Not Be Dismissed

California courts have generally provided that there are four circumstances in which a duty to disclose may arise:

> (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed.

*Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1033 (N.D. Cal. 2014) (quoting *Collins v. eMachines, Inc.*, 202 Cal.App. 4th 249, 255-56 (2011)). Plaintiff properly alleges that Apple breached its duty to disclose the defective nature of the Watches and thus violated the UCL and CLRA. ¶¶ 46, 60, 88.

Defendant first argues that Plaintiff has not stated actionable misrepresentations because his allegations in this regard are vague and do not specify how the misrepresentations are false, while Apple's promotional statements at issue are non-actionable. Motion, at 7-8. Apple further argues that Plaintiff has not stated an actionable omission because he has not sufficiently identified the Defect that Apple failed to disclose, did not allege sufficient facts **to establish** Apple's awareness of the Defect, or that the Defect posed a safety concern. *Id.* at 9-14. Apple's arguments are without any merit.

### 1.  Plaintiff Has Stated A Claim Arising Out Of Defendant's Partial Representations

Defendant asserts that "it is unclear whether Plaintiff actually read and relied upon the statements quoted in the Amended Complaint or whether those statements are merely examples of the types of promotional content purportedly available on Apple's website." Motion, at 7. However, contrary to Apple's assertions, the Amended Complaint clearly specifies that Plaintiff

"examined" and "reviewed" the quoted promotional content (sometime between September 2016, when Apple first began selling the Series 2 Watch, and December 1, 2016, when Plaintiff purchased his Series 2 Watch). ¶¶ 25, 46; *see In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1039 (N.D. Cal. 2012) (finding that "[p]laintiffs have alleged with specificity which misrepresentations they were exposed to" where "[p]laintiffs pled specific facts that Apple 'actively advertised, marketed, and promoted its bait Apps as 'free' or 'nominal''") (Koh, J.).[3]

Meanwhile, Apple's contention that Plaintiff does not allege how the statements are false is beside the point because the representations, whether factually true or not, were misleading. *See GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*, No. EDCV1504125VAPJEMX, 2016 WL 6562064, at *13 (C.D. Cal. Apr. 21, 2016) ("California recognizes that making partial representations can give rise to a duty to disclose when 'the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead'") (quoting *Warner Constr. Corp. v. City of Los Angeles*, 2 Cal.3d 285, 294 (1970)). In other words, "a defendant may not 'suppress or conceal any facts within his knowledge which materially qualify those stated.'" *Id.*

For example, in *GeoData Sys. Mgmt., Inc.*, the court found that by "disclosing the existence of [a] patent but referring to it as 'our patent'" to its business partner, the defendant had a duty to disclose that it co-owned that patent with its co-defendant as that information was material to the plaintiff's decision not to challenge the patent. *Id.* And, similarly, in *In re Apple In-App Purchase Litig.*, this Court found that after advertising certain of its "Apps" as "free" or "nominal," Apple had a duty to inform consumers that "once an iTunes account holder entered a

---

[3] In contrast, the complaint in *Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2017 WL 976048, at *8 (N.D. Cal. Mar. 14, 2017), which Apple cites, was "devoid of allegations that plaintiffs were exposed to *any* representation, statement, advertisement, or even packaging prior to purchasing an iPhone 6 or 6 Plus." (Emphasis in original.)

password, he or she could make purchases for up to fifteen minutes without re-entering the password." *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, at 1039; *see In re NJOY, Inc. Consumer Class Action Litig.*, No. CV1400428MMMJEMX, 2015 WL 12732461, at *16 (C.D. Cal. May 27, 2015) (sustaining claim that defendant had duty to inform consumers about the safety of inhaling substances after representing the substances as "generally" safe, even though that only pertained to its use in food).

Here, Apple informed Plaintiff that the Watches were objectively durable--*i.e.*, the Watch had "[w]ater resistance to 50 meters"--which is actionable, as this Court set forth in *Rasmussen*. ¶ 46; *see Rasmussen*, 27 F. Supp. 3d at 1040 (citing statement that "a lamp has '35,000 candle power and 10-hour life'" as an example of an actionable statement). By representing the objective durability of the Watches, Apple also has a duty to inform purchasers that the Watch may otherwise break as a result of the Defect.

## 2. Plaintiff's Allegations Establish That The Defect Is A Material Fact

Defendant argues that Plaintiff's omission-based UCL and CLRA claims should be dismissed because the Amended Complaint's description of the Defect does not meet Rule 9(b), relying primarily on this Court's decision in *Punian v. Gillette Co.* ("*Punian II*"), No. 14-CV-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016). Motion, at 9-10. As this Court explained in *Punian II*, the sufficiency of the description of a defect arises in the context of the materiality analysis, *i.e.*, whether the alleged defect is a "material fact that [Apple] had a duty to disclose." *Punian II*, 2016 WL 1029607, at *11.[4] The materiality analysis focuses on whether,

---

[4] Apple's other authorities are inapposite. Besides failing to provide **any** detail regarding the alleged defects, the portions of the other authorities that Apple cites concern negligence-based claims, where the nature of the alleged defect plays a significantly more central role. *See Markel Am. Ins. Co. v. Pac. Asian Enterprises, Inc.*, No. C-07-5749 SC, 2008 WL 2951277, at *6 (N.D. Cal. July 28, 2008) (plaintiff does not allege "how or why the product was negligently designed and manufactured"); *Provencio v. Armor Holdings, Inc.*, No. CVF-07-00651 AWI TAG, 2007 WL 2814650, at *2 (E.D. Cal. Sept. 25, 2007) (same).

based on the allegations, it is plausible that "'members of the public . . . had an expectation or an assumption' about the matter in question." *Id.* at *15. Contrary to Apple's assertion, however, this Court's detailed discussion of the materiality analysis in *Punian II* establishes that Plaintiff has adequately alleged the Defect as a fact material to a reasonable consumer.

In *Punian II*, the Court found that the plaintiff did not "plausibly allege that Duralock Batteries' potential to leak is a material defect" for two reasons. First, the plaintiff did not "identif[y] any cause for Duralock Batteries' potential to leak within ten years, or alleged the existence of a design or manufacturing defect in Duralock Batteries." *Punian II*, 2016 WL 1029607, at *14. Specifically, the plaintiff did not "allege that leakage is the result of any systematic design, technical, manufacturing, or other flaw ***present in all Duralock Batteries.***" *Id.* at 13 (emphasis added). After all, a defect cannot be material if it does not plausibly exist or is insignificant.

Here, in contrast, Plaintiff alleges that Apple sold Watches that "***all contain the same defect and/or flaw***, which causes the screen on the Watches to crack, shatter, or detach from the body of the Watch . . . through no fault of the wearer, oftentimes only days or weeks after the purchase." ¶¶ 3, 39-45 (emphasis added). Indeed, while the screen on Plaintiff's Watch unexpectedly detached from the Watch's body shortly after he removed the Watch from its charger, other consumers reported manifestation of the Defect in the form of the "appearance of hairline cracks running vertically and horizontally along the Perimeter of their Watch screens." ¶¶ 41, 48. Courts, including this one, have found such descriptions of a defect—which detail the effects of the defect—sufficient to support the materiality of a product defect on a motion to dismiss. *See, e.g.*, *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2015 WL 4111448, at *1, *10 (N.D. Cal. July 7, 2015) (sustaining UCL and CLRA fraudulent omission claims where plaintiff alleged that the vehicle at issue "suffers from a 'systemic defect' that "'renders the

system prone to sudden and premature failure during ordinary and foreseeable driving situations,'" which "causes drivers of the [v]ehicles to 'experience significantly increased steering effort and an increased risk of losing control of their vehicles when the EPAS system fails' and 'defaults to manual steering'"); *Elias v. Hewlett-Packard Co.*, No. 12-CV-00421-LHK, 2014 WL 493034, at *4 (N.D. Cal. Feb. 5, 2014); *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1163 (C.D. Cal. 2011) ("[E]very Plaintiff alleges that his or her Toyota vehicle contains a defect; namely, the vehicles 'accelerate suddenly and dangerously out of the driver's control and lack [ ] a fail-safe mechanism to overcome this'"); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) (plaintiffs alleged that defendant's speedometers were defective because they were "prone to fail and to read a different speed than the vehicle's actual speed").

Second, and more importantly, the plaintiff in *Punian II* failed to establish materiality because she did not adequately allege that consumers had a reasonable expectation that "Duralock Batteries have no potential to leak for ten years." *Punian II*, 2016 WL 1029607, at *15. As this Court explained, a "reasonable consumer would not understand the Duralock guarantee as a representation that a product has no potential to fail for ten years, but as a promise to repair, replace, or refund a failed product." *Id.*

The *Punian II* plaintiff's inability in this regard was more significant than her failure to plead the existence of the same defect in all Duralock Batteries because the gravamen of an undisclosed defect for omission-based UCL and CLRA claims is whether knowledge of that defect would be material to a reasonable consumer, not the technical cause of the defect. *See id.* at 9 ("A duty to disclose arises . . . when the defendant had exclusive knowledge of material facts not known to the plaintiff; [or] when the defendant actively conceals a material fact from

the plaintiff").[5] As this Court explained in *Punian II,* even though the plaintiffs in *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255 (2006), detailed the technical cause of the defect; *i.e.*, the use of tubular steel, rather than cast iron, for automotive exhaust manifolds, the plaintiffs' CLRA and UCL claims still failed because they did not establish that the alleged defect contradicted reasonable consumer expectations. *Id.* In contrast, even though the plaintiffs in *Falk* did not identify the technical cause of the speedometer's defect, "the district court held that the plaintiffs did plead a material defect . . . [because] the plaintiffs alleged a reasonable consumer would expect a speedometer to last for the life of the vehicle, and '[c]ommon experience supports plaintiffs' claim that a potential car buyer would view as material a defective speedometer.'" *Punian II*, 2016 WL 1029607, at *15; *Falk*, 496 F. Supp. 2d at 1093 (plaintiffs only alleged that "the speedometers installed in its Trucks were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use").

Here, as in *Falk*, Plaintiff alleges and "common experience" supports that "a reasonable consumer expects and assumes that, when he/she purchases an Apple Watch purportedly designed for active wear and use, the Watch screen will not spontaneously crack, detach, or shatter when it is being used within its normal and/or expected range of operation," and would "expect that the Watch will not be a safety hazard." ¶ 59. Thus, Plaintiff's allegations describing the effects of the Defect and its existence in all the Watches meets the requirements of Rule 9(b)

---

[5] In contrast, the technical basis of an alleged defect is central to product liability claims. *See, e.g.*, *Ferrari v. Nat. Partner, Inc.*, No. 15-CV-04787-LHK, 2017 WL 76905, at *5 (N.D. Cal. Jan. 9, 2017) ("'In order to adequately state a claim' for design defect, a plaintiff must 'identify which design defect theory is being utilized,' and 'allege facts to support the test that Plaintiff identifies,'" *i.e.*, "'if the product has failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or (2) if, in light of the relevant factors discussed below, the benefits of the challenged design do not outweigh the risk of danger inherent in such design").

1    and establishes the Defect as a material fact that Apple had a duty to disclose, regardless of its

2    technical cause.

3                    **3.      Plaintiff's Allegations Establish Defendant's Knowledge Of The Defect**

4            Apple argues that Plaintiff's allegations identifying and quoting consumer complaints

5    about the Watches are insufficient to establish Apple's knowledge of the Defect at the time

6    Plaintiff purchased his Watch in December 2016. Motion, at 11-12. But Plaintiff alleges more

7    than the 21 consumer complaints identified in his Amended Complaint, five of which predate

8    Plaintiff's purchase of his Watch in 2016. ¶ 50.[6] Specifically, Plaintiff also alleges that Apple

9    knew of the Defect either at or immediately after it first began selling the Watches in September

10   2016 based on: (1) Apple acknowledging the existence of a similar or same defect in its First

11   Generation and Series 2 watches, the predecessors of the Watches; (2) consumers' complaints

12   and repair requests at Apple stores and to Apple Support, including shortly after the release of

13   the Series 3 Watch; (3) Apple's testing of the Watches; (4) the pervasiveness of the

14   manifestation of the Defect; and (5) the existence of an aftermarket where vendors sell and

15   market adhesives specifically designed to reattach Apple Watch screens. ¶¶ 25, 42, 52-53, 55.

16           Plaintiff's allegations are a far cry from the allegations referenced in Defendant's

17   authorities, which reject inferring knowledge solely from online consumer complaints. Motion,

18   at 11-12; *see Berenblat v. Apple, Inc.*, No. 08-4969 JF (PVT), 2010 WL 1460297, at *9 (N.D.

19   Cal. Apr. 9, 2010) (complaints posted on Apple's consumer website were by themselves

20   "…insufficient to show that Apple had knowledge"); *Baba v. Hewlett-Packard Co.*, No. C 09-

---

[6] Apple's criticism that "it is unclear whether any of these complaints are about the Watches at Issue (as opposed to the First Generation (Series 0)" is baseless and should be ignored because it contradicts Plaintiff's allegation that all of the complaints relate to the Watches at issue and goes beyond the facts alleged in Plaintiff's Amended Complaint. ¶ 50; *see Rupert v. Bond*, 68 F. Supp. 3d 1142, 1154 (N.D. Cal. 2014) ("a court should not look beyond the four corners of a complaint when ruling on a motion to dismiss"). Relatedly, contrary to Apple's footnote assertion, Plaintiff never "admits" that the First Generation predecessors of the Watches did not contain the Defect. Motion, at 12 n.6.

05946 RS, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011) ("Awareness of a few customer complaints, however, does not establish knowledge of an alleged defect"); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 975 n.9 (N.D. Cal. 2008) ("Random anecdotal examples of disgruntled customers posting their views on websites at an unknown time is not enough to impute knowledge upon defendants"). Instead, Plaintiff's allegations satisfy the requirement set forth by this Court that a plaintiff include "additional allegations besides general consumer complaints to suggest that a defendant had knowledge of a product defect at the time of sale." *Punian v. Gillette Co.* ("*Punian I*"), No. 14-CV-05028-LHK, 2015 WL 4967535, at *10 (N.D. Cal. Aug. 20, 2015) (citing *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1148 (9th Cir. 2012)).  As such, Plaintiff's allegations are akin to those authorities cited in *Punian I* where the Court found the allegations sufficient to infer the defendant's knowledge. *See Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176-LHK, 2011 WL 3501715, at *4 (N.D. Cal. Aug. 10, 2011) (plaintiff sufficiently alleged knowledge of defect based on the fact that (1) industry standards required multiple tests of defective product; (2) the defendant made specific claims as to the capacity and speed of its allegedly defective product; (3) the alleged product defect was present "out of the box" in every product and "manifested on a regular basis"; and (4) "consumers complained of the defect both in third-party fora as well as directly to [the defendant]"); *Falk*, 496 F. Supp. 2d at 1097 (plaintiff adequately alleged knowledge of defect here, in addition to alleging that consumers made complaints to defendant; the plaintiff also alleged the defendant had knowledge of other information showing a product defect at the time of sale, including "information unavailable to the public"); *Herremans v. BMW of N. Am., LLC*, No. CV 14-02363 MMM PJWX, 2014 WL 5017843, at *9 (C.D. Cal. Oct. 3, 2014) (inferring knowledge of defect where, in addition to the defendant receiving "numerous consumer complaints," the plaintiff alleged that (1) the defendant learned of the defect through internal

testing, pre-release testing data, and repair records; and (2) the defendant embarked on a redesign of the defective part which, "given the extensive research necessary to redesign the part, and the redesign effort undertaken," implied that the defendant was aware of the defect before the plaintiff purchased the defective vehicle).  *See also Butler v. Porsche Cars N. Am., Inc.*, No. 16-CV-02042-LHK, 2016 WL 4474630, at *5 (N.D. Cal. Aug. 25, 2016) (inferring knowledge of defect "as early as May 2007" where: (1) the defendant received "numerous complaints" about the defect prior to the time defendant began selling the 2007 model of the car; (2) the defendant issued a TSB regarding the defective wiring in January 2008; (3) the defendant stopped using the defective wiring in all model years after 2007, including the 2008 model year; and (4) the plaintiff also includes examples of complaints regarding the defective wiring posted on online message boards in 2013). Moreover, where, as here, consumer complaints that "surface immediately after rollout" of a product is sufficient to impute knowledge that the defendant knew "at or about the time of rollout" that the product was defective. *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 958 (N.D. Cal. 2014)

### 4.     Plaintiff Has Established A Safety Issue

Plaintiff alleges that the Defect "poses a significant safety hazard to consumers, as it has caused a number of putative Class members to suffer cuts and burns in connection with the screens cracking, shattering and/or detaching from the body of the Watches." ¶ 9.  Nevertheless, Apple argues that Plaintiff has failed to allege a safety issue such that Plaintiff's omission-based claims are actionable because the claim is brought after the expiration of the Limited Warranty. Motion, at 12-14. As a preliminary matter and as discussed further below, Section A.5, *infra*, regardless of the existence of a safety hazard, Apple also had a duty to disclose the Defect even if it manifested after the expiration of the Limited Warranty because the Defect existed as of the

time of manufacture, was known to Apple, and impacts a critical aspect of the Watches when the Defect manifests.

In any event, Apple incorrectly asserts that Plaintiff has not alleged a sufficient "nexus" between the Defect and the resulting safety hazard, relying on *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) and *Elias v. Hewlett-Packard Co.* ("*Elias II*"), 950 F. Supp. 2d 1123 (N.D. Cal. 2013).   In both of these cases, however, the connection between the alleged safety hazard and defect was simply implausible. As the Ninth Circuit explained in *Wilson*:

> Plaintiffs simultaneously allege that the design defect cuts off power from the Laptops and that the Laptops can ignite into flames through normal use. But it is difficult to conceive (and the complaint does not explain**)** how the Laptops could ignite if they are "unable to receive an electrical charge."

*Wilson*, 668 F.3d at 1144. Likewise, the plaintiff in *Elias II* alleged a similar contradictory connection between the alleged safety hazard and defect. *See Elias II*, 950 F. Supp. 2d at 1136 ("Here, Plaintiff alleges a similar safety hazard—that due to the insufficient power supply, HP's computers were more likely to 'overheat, short out, melt and catch fire, creating a significant safety risk'"). Indeed, the plaintiff in *Elias II* did not even allege that "his computer or anyone else's computer ever actually 'caught fire.'" *Id.* at 1136-37.[7]

To contrast, the Ninth Circuit in *Wilson* cited two cases where the connection between the alleged defect and the safety hazard was obvious:

> The present case is therefore distinguishable from those cases surviving a motion to dismiss where the alleged design defect could conceivably lead to a safety hazard. *See Cholakyan v. Mercedes–Benz USA, LLC*, 796 F.Supp.2d 1220 (C.D.Cal.2011) (holding that vehicle's water-leak defect could cause sudden and unexpected engine

---

[7] Apple also cites *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980 (N.D. Cal. 2010), *aff'd*, 462 F. App'x 660 (9th Cir. 2011), in support. But, *Smith* is completely inapposite, as it was a decision *on a motion for summary judgment*, where the plaintiffs were unable to "offer[] evidence sufficient to support a finding that the failure to start resulting from the ignition-lock defect presents a risk to safety." *Smith*, 749 F. Supp. 2d at 991. The standard of review is obviously different here, as Plaintiff has not yet had the opportunity to conduct discovery, and, as discussed below, putative Class members have stated that they have suffered personal injury from the manifestation of the Defect. ¶ 45.

failure and result in personal injury or death); *Marsikian v. Mercedes Benz USA, LLC*, No. CV 08–04876 AHM (JTLx), 2009 WL 8379784, at *6–7, 2009 U.S. Dist. LEXIS 117012, at *16–17 (C.D.Cal. May 4, 2009) (denying motion to dismiss a CLRA claim where plaintiff alleged that air intake systems were "susceptible to clogging" and the defect could lead to "substantial electrical failure" because "it is not implausible that the [clogging] would cause 'catastrophic engine and electrical system failure' while the car is on the road").

*Wilson*, 668 F.3d at 1145; *see also Falk*, 496 F. Supp. 2d at 1096 (finding plaintiffs "successfully" established a safety hazard from the faulty speedometers by alleging that it creates "the risk of inadvertent speeding, driving at unsafe speeds, and accidents").

Likewise, here, the Apple Watch Defect's safety hazard is obvious and plausible. If the Defect causes the "screens on the Watches to crack, shatter, or detach from the body of the Watch" at any time, it is "common sense" that a purchaser may be wearing the Watch at the time the Defect manifests, thus resulting in a personal injury. ¶ 3; *Zapata Fonseca v. Goya Foods Inc.*, No. 16-CV-02559-LHK, 2016 WL 4698942, at *5 (N.D. Cal. Sept. 8, 2016) ("Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). Indeed, unlike the *Elias II* plaintiff, Plaintiff here specifically alleges that "several putative Class members have reported that they have suffered scratches and burns due to the sudden manifestation of the Defect." ¶ 45.

### 5. Even If The Defect Did Not Pose A Safety Issue, Apple Still Had A Duty To Disclose The Defect

The Ninth Circuit in *Wilson* recognized that "California federal courts have generally interpreted *Daugherty* [*v. Am. Honda Motor Co.*, 144 Cal.App.4th 824 (2006)] as holding that "[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." *Wilson*, 668 F.3d at 1141. But after *Daugherty* and *Wilson*, the California Court of Appeals held in *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164 (2015), that California law also recognizes that manufacturers have a duty to

disclose defects "central and necessary to the function" of the product, without limitation to the warranty obligations:

> Both *Daugherty* and *Bardin* do address disclosure of defects related to safety concerns in the context of CLRA and UCL claims. However, neither *Daugherty* nor *Bardin* preclude a duty to disclose material information known to a manufacturer and concealed from a consumer.
>
> . . .
>
> The court in *Collins* [*v. eMachines, Inc.*, 202 Cal.App.4th 249, 255 (2011)] distinguished both *Daugherty* and *Bardin* in finding that the manufacturer had a duty to disclose a material defect in its product. Specifically, the *Collins* court noted that the defect in the hardware logic of the computer was the result of improper manufacturing, causing the chip to corrupt data on the user's floppy disk. The defect in *Collins* was not the result of a breakage of the product over time because of use and wear tear like the engine oil leak in *Daugherty*. In addition, unlike the metal composition of the exhaust manifolds in *Bardin*, the hardware logic in the computers in *Collins* was material, because it was ***central and necessary to the function of the computer as a computer.*** (*Collins*, *supra*, 202 Cal.App.4th at p. 258, 134 Cal.Rptr.3d 588.)

*Rutledge*, 238 Cal. App. 4th at 1173-75 (emphasis added). Federal courts have recently recognized this development. *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863 (9th Cir. 2018) ("While *Collins* and *Rutledge* are somewhat vague about the test for determining whether a defendant has a duty to disclose, they sanction a UCL omission claim when: the plaintiff alleges that the omission was material; second, the plaintiff must plead that the defect was central to the product's function; and third, the plaintiff must allege one of the four *LiMandri* factors");[8] *Beyer v. Symantec Corp.*, No. 18-CV-02006-EMC, 2018 WL 4584217, at *8 (N.D. Cal. Sept. 21, 2018) ("The requirement in *Williams* that there be a safety hazard has been cast into doubt by recent California Court of Appeal opinions") (citing *Collins* and *Rutledge*).

---

[8] The "*LiMandri* factors" are "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts."*LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).

Here, Plaintiff has alleged that Defendant's failure to disclose the Defect was material (¶¶ 54-55, 89-91); the Defect is clearly "central and necessary to the function" of the Watch, as its manifestation prevented Plaintiff and other putative Class members from using the Watch completely (¶¶ 3, 48, 50); and Apple had "exclusive knowledge of material facts not known to the plaintiff" and "actively conceal[ed] a material fact" (¶¶ 55, 60, 88).  As such, Apple had a duty to disclose the Defect irrespective of the Limited Warranty or the existence of a safety hazard.

**B.  Plaintiff Has Stated A Claim Under The UCL**

"The UCL prohibits 'unfair competition,' which is broadly defined to include 'three varieties of unfair competition-acts or practices which are unlawful, or unfair, or fraudulent." *Davis v. HSBC Bank Nevada, N.C.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (quoting *Cal-Tech Comm'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)). "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs." *Id.* Plaintiff asserts that Apple has violated all three prongs of the UCL in the Amended Complaint. ¶ 68.

    **1.**        **The "Unfair" Prong**

"The 'unfair' prong of the UCL creates a cause of action for a business practice that is unfair even if not proscribed by some other law." *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1226 (N.D. Cal. 2014) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1143 (2003) (Koh, J.)). "[T]here are at least two possible tests [to determine if a business practice is 'unfair' under the UCL]: (1) the 'tethering test,' which requires 'that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions,' and (2) the 'balancing test,' which examines whether the challenged business

practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *Id.* (quoting *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal.App.4th 247, 257 (2010)). Plaintiff asserts that Apple's misconduct is "unfair" under the UCL's "balancing test." ¶ 74 ("The injury to consumers by [Apple's] conduct greatly outweighs any alleged countervailing benefit to consumers or competition under all of the circumstances").

Apple argues that Plaintiff has failed to allege any "unfair" acts under the UCL because Plaintiff "makes conclusory allegations" that "fail[s] to reference any established public policy that Apple's actions have violated" and does not identify "any conduct by Apple that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Motion, at 15-16. This argument is reminiscent of that which the Court rejected in *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197. Like Apple here, the defendant in *Adobe* argued that "[p]laintiffs' claim under the 'balancing test' is 'conclusory and formulaic.'" *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d at 1226. The Court responded as follows:

> Adobe's argument that Plaintiffs' "balancing test" allegations are insufficient is unpersuasive. Adobe appears to object that Plaintiffs do not allege any injuries resulting from Adobe's allegedly unfair conduct in the precise paragraph of the Complaint asserting a claim under the "balancing test." Mot. at 19. However, while Plaintiffs are required to plead enough facts in support of their claims, the pleading standard is not so rigid as to insist that each count repeat every factual allegation. Rather, the complaint must be specific and clear enough as a whole such that the Court can evaluate the plausibility of each claim and the defendant is placed on notice as to the basis for the plaintiff's claims. . . . Elsewhere in the Complaint, Plaintiffs allege that Adobe's conduct placed Plaintiffs at a substantial risk of future harm and caused Plaintiffs to overpay for Adobe products and services.

*Id.* at 1226-27; *see Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1146–47 (N.D. Cal. 2013) ("The Court finds that, if Herskowitz's allegation is that Apple charges individuals twice for a single purchase and single download, his contention may suffice to state a claim for unfairness under the UCL") (Koh, J.).

Likewise here, "elsewhere" in the Amended Complaint, Plaintiff alleges that he and members of the putative Class overpaid for the Watches, and run the risk of future harm even if they repair their Watches. ¶¶ 48, 91. *See also Weeks v. Google LLC*, No. 18-CV-00801 NC, 2018 WL 3933398, at *14 (N.D. Cal. Aug. 16, 2018) ("The Court is unwilling, at a motion to dismiss, to find that Google's actions were not at least oppressive or substantially injurious to plaintiffs, without justification" where Google allegedly repaired defective phones with defective parts); *Lewand v. Mazda Motor of Am., Inc.*, No. SACV1700620JVSJCGX, 2017 WL 8117764, at *6 (C.D. Cal. Nov. 8, 2017) ("Because Lewand properly alleges that Mazda's representations are misleading, his claim satisfies the balancing test").[9]

### 2.  The "Unlawful" And "Fraudulent" Prongs

"The 'unlawful' prong of the UCL 'borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'" *Butler*, 2016 WL 4474630, at *7 (quoting *Cal-Tech Comm'ns, Inc.*, 20 Cal. 4th at 180). "As to the 'fraudulent' prong of the UCL, in the context of CLRA cases, 'the standard for deceptive practices under the fraudulent prong of the UCL applies equally to claims for misrepresentation

---

[9]  Apple's authorities other than *Herskowitz*, which actually supports Plaintiff as mentioned above, are easily distinguishable. *Drum v. San Fernando Valley Bar Assn.*, 182 Cal. App. 4th 247, 257 (2010), involved allegations of uncompetitive conduct, rather than consumer misrepresentations or fraud.  In *Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*, No. 17-CV-03805-LHK, 2018 WL 1805516, at *11, *13 (N.D. Cal. Apr. 16, 2018) and *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1051 (N.D. Cal. 2014), neither the allegations in the "count" or outside the "count" satisfied the pleading requirements. The court in *Palmer v. Apple Inc.*, No. 5:15-CV-05808-RMW, 2016 WL 1535087, at *7 (N.D. Cal. Apr. 15, 2016), only analyzed whether "Apple's conduct [was] 'immoral, unethical, oppressive, unscrupulous, and injurious,'" and does not address whether the allegations set forth were "substantially injurious to consumers." *See In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 990 (N.D. Cal. 2016) ("None of the three tests for unfairness require plaintiffs to plead that defendants acted in an immoral, unethical, oppressive, or unscrupulous manner") (Koh, J.). In contrast to the Amended Complaint and the allegations in *In re Adobe Sys., Inc. Privacy Litig.*, the plaintiff in *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858 (N.D. Cal. 2012), does not appear to have included any overpayment allegations.

under the CLRA' and 'courts often analyze the two statutes together.'" *Id.* (quotations omitted). As discussed above, Plaintiff has adequately alleged that Apple violated the CLRA, and, consequently, has also stated a claim against Apple for violating the "unlawful" and "fraudulent" prongs of the UCL. *See id.* ("Because the Court finds that the CAC states a claim under the CLRA, the CAC also states a claim under the 'unlawful' prong of the UCL" and "also states a claim under the 'fraudulent prong' of the UCL as a deceptive practice").

## C.  Plaintiff Has Stated A Claim For Breach Of Express Warranty

In its Motion, Apple argues that Plaintiff "has not (and cannot) allege that the purported Defect occurred within one year after the date of purchase or that it was a defect "in materials and workmanship," and thus that Plaintiff's claims for breach by Apple of its Limited Warranty should be dismissed. Motion, at 17–18. To prevail on his breach of express warranty claim, Plaintiff must prove: (1) "the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (Cal. 2010).

### 1.  Applicability Of Apple's Limited Warranty To Plaintiff

Under the terms of its Limited Warranty for its Watches, "Apple warrants . . . against defects in materials and workmanship when used normally in accordance with Apple's published guidelines . . . for a period of ONE (1) Year from the date of original retail purchase by the end-user purchaser ("Warranty Period")." ¶ 35. For warranties like Apple's, "[t]he general rule is that an express warranty has no affect after the applicable time period has elapsed." *Marchante v. Sony Corp. of Am., Inc.*, 801 F. Supp. 2d 1013, 1020 (S.D. Cal. 2011).[10]

---

[10] Plaintiff can amend the Complaint to include one or more plaintiffs whose Watch manifested the defect within the warranty period and, nevertheless, was denied warranty coverage by Apple.

Plaintiff concedes he does not fall within the one-year warranty period set forth in Apple's Limited Warranty.

**2.   Plaintiff Has Pled A Defect Covered By Apple's Warranty**

In addition to the above, Apple also argues that Plaintiff's claim for breach of express warranty is deficient because "Plaintiff does not allege plausible facts establishing a defect in the materials or workmanship of the Apple Watch." Motion at 18. Apple further contends "[a]n express warranty covering 'materials and workmanship' does not include design defects." *Clark v. LG Elecs. USA, Inc.*, 2013 WL 5816410, at *7 (S.D. Cal. 2013). Here, Apple argues that "the gravamen of Plaintiff's Complaint is that all of the Watches at Issue contain the same defect" and this is an "issue with design choices, not a manufacturing defect . . . [that] is plainly not within the scope of the Limited Warranty. . . ." Motion at 19.

To support this argument, Defendant cites a number of cases, but places special significance on *Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2017 WL 976048 (N.D. Cal. 2017). There, the plaintiffs alleged:

> "'[t]he materials used in the iPhone's external casing are insufficient and inadequate to protect their internal parts' and thus 'the external casing of the iPhones is not sturdy, strong, or durable' . . . the iPhones . . . 'fail to incorporate underfill or a shield over the logic board'. . . [and] [a]s a result . . . 'the internal components of the iPhones' are subject to 'increased external stress and physical harm. . . .'"

2017 WL 976048, at *11. Reviewing these allegations, this Court found that, "at bottom, [plaintiffs' complaint] allege[d] a defect in Defendant's design of the iPhone . . . [because] [t]he crux of Plaintiffs' allegations is that the iPhone 6 and 6 Plus were 'built in accordance with [Defendant's] intended specifications,' but that Defendant chose materials . . . that are insufficient to protect the iPhone's internal components." 2017 WL 976048, at *11 (citing *McCabe v. Am. Honda Motor Co.*, 100 Cal. App. 4th 1111, 1120 (Cal. Ct. App. 2002)).  Apple argues that this case and *Davidson* are analogous. They are not.  The plaintiffs in *Davidson*

1   alleged defects in the iPhones' materials—specifically, their "external casing"—which could

2   reasonably be construed as a design choice by Apple. Here, by contrast, Plaintiff alleges a

3   Defect that causes the Watches' screens to "detach[], crack[], or shatter[]," a defect that could

4   be attributable to issues with the Watches' design *or* manufacture. ¶ 43.  Tellingly, despite

5   Apple's self-serving efforts to characterize the Defect, the Amended Complaint never refers to

6   the issue as a design defect.

7          This  case  more  closely  resembles  *Hardt  v.  Chrysler  Grp.  LLC*,  No.

8   SACV1401375SJOVBKX, 2015 WL 12683965, at *9 (C. D. Cal. 2015), where the court found

9   plaintiffs had adequately pleaded a manufacturing defect under an express warranty. The court

10  opined:

11

12          "The symptoms alleged to be attributable to the Defect include 'the clutch pedal []
            "go[ing] soft" and remain[ing] depressed to the floors; the transmission [] fail[ing] to
13          engage or disengage; the gear shift [] burn[ing] out; the clutch and transmission []
            burn[ing] out,' and the transmission making a grinding sound in neutral, collectively
14          referred to as the Transmission Defect . . . While these allegations do not name any of
            the components expressly covered by the Powertrain Limited Warranty, at this stage
15          of the litigation, '[plaintiffs are] not required to plead the mechanical details of an
            alleged defect in order to state a claim.'"
16

17   2015 WL 12683965, at *9 (alteration in original) (quoting *Cholakyan v. Mercedes-Benz USA,*

18   *LLC*, 796 F. Supp. 2d 1220, 1237, n. 60 (C.D. Cal. 2011)). Like *Hardt*, Plaintiff here alleges a

19   Defect "in every series, model and size of the Watches" that causes the Watches' screens to

20   "detach[], crack[], or shatter[];" that manufacturing defects are covered by Apple's Limited

21   Warranty; and that Apple "has insisted that the damage caused by the Defect is the fault of

22   consumers and refused to repair or replace [affected] Watches free of charge, as required under

23   the Limited Warranty." ¶¶ 43–44, 54. At this stage in proceedings, these facts are sufficient to

24   plead a claim for breach of express warranty.

25          That Plaintiff alleges the Defect "is present in every series, model and size of the

26   Watches," is not dispositive to determining whether the gravamen of Plaintiff's Amended

27

28

Complaint is a design defect, rather than a manufacturing defect. This point is demonstrated in *Ji Chang Son v. Tesla, Inc.*, No. SACV 16-02282 JVS, 2017 WL 5640545, at *3, n. 4 (C.D. Cal. 2017), where the court posited the following question to defense counsel: "'if a car design required the use of a round part, but each car instead received an oval part, then each car has departed from the intended design; this defect would be a manufacturing defect, correct?'" Tesla then conceded that the defect in the court's hypothetical would be a manufacturing defect. *Id.*

Finally, Apple continually notes in its Motion that Plaintiff has "inadequately identified" the Defect in the Watches. However, as stated above, "[plaintiffs are] not required to plead the mechanical details of an alleged defect in order to state a claim." *Cholakyan*, 796 F. Supp. 2d at 1237, n. 60 (complaint stating "one or more design or manufacturing defects that cause Class Vehicles to be prone to water leaks and flooding" sufficient to state claim).

For the above reasons, Plaintiff has sufficiently pled a claim of breach of express warranty by Apple.

**D.  Plaintiff Has Stated A Claim Under The Magnuson-Moss Warranty Act**

Because Plaintiff has adequately stated a claim for breach of express warranty, he has also adequately stated a claim under the Magnuson-Moss Warranty Act. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (claims under Magnuson-Moss "stand or fall with express and implied warranty claims under state law.").

**E.  Plaintiff Has Stated A Claim For Unjust Enrichment Under Colorado Law**

Apple argues Plaintiff has failed to state a claim for unjust enrichment under California or Colorado law. Motion at 22–24. It should be noted that, in the Amended Complaint, Plaintiff did not assert a claim for unjust enrichment under California law, but only under Colorado law.

¶¶ 129–134. And, when considering Plaintiff's unjust enrichment claim in the context of Colorado law alone, it is clear Plaintiff has alleged sufficient facts to state such a claim.

Unjust enrichment "is a claim in quasi-contract based on the principles of restitution" that is "designed to avoid benefit to one to the unfair detriment of another." *West Ridge Group, LLC v. First Trust Co. of Onaga*, 414 Fed. Appx. 112, 120 (10th Cir. 2011). "A party claiming unjust enrichment must prove that: (1) the defendant received a benefit, (2) at the plaintiff's expense, (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *Sterenbuch v. Goss*, 266 P. 3d 428, 431 (Colo. App. 2011). Colorado courts have previously held that an unjust enrichment claim "is a remedy designed for circumstances in which other remedies are unavailable; and thus . . . is not available as a mere alternative legal theory when the subject is covered by an express contract." *West Ridge*, 414 Fed. Appx. At 120 (citing *Interbank Invests., LLC v. Eagle River Water & San. Dist.*, 77 P. 3d 814, 819 (Colo. App. 2003)).

Apple latches on to this latter language to argue that "Plaintiff cannot plead an unjust enrichment claim in the alternative to his breach of warranty claim . . . [and his] failure to state a claim for breach of express warranty . . . does not save the unjust enrichment claim." Motion at 24. Yet Apple neglects to note two important exceptions; first, "a party can recover on a quasi-contract when the implied-in-law contract covers conduct outside the express contract or matters arising subsequent to the express contract;" and second, "a party can recover on a quasi-contract when the party will have no right under and enforceable contract." *Interbank Invests.*, 77 P. 3d at 816; *Ball Dynamics Int'l, LLC v. Saunders*, No. 16-cv-00482-NYW, 2016 WL 10859782, at *7–8 (D. Colo. 2016).

Plaintiff here falls within both of these exceptions. Regarding the first exception, Plaintiff alleges misconduct by Apple from both before he purchased his Watch and after his

1  Limited Warranty period expired. As for the second exception, if this Court dismisses Plaintiff's

2  express warranty claim it will necessarily have found that the Defect alleged by Plaintiff did not

3  fall within Apple's Limited Warranty and unjust enrichment could provide an alternate theory

4  of recovery. Apple argues that Plaintiff's unjust enrichment claim should not be allowed to

5  proceed as an alternative claim to his breach of warranty allegations, but fails to acknowledge a

6  number of cases where courts have allowed this exact thing. *See Robert W. Thomas and Anne*

7  *McDonald Thomas Revocable Trust v. Inland Pacific Colorado, LLC*, No. 11-cv-03333-WYD-

8  KLM, 2012 WL 2190852, at *5 (D. Colo. 2012) ("the Trust's decision in the Amended

9  Complaint to plead the breach of contract and unjust enrichment claims in the alternative is

10  appropriate at [the pleading] stage in the litigation"); *Powers v. Emcon Assocs., Inc.*, No. 14-cv-

11  03006-KMT, 2016 WL 1111708, at *4 (D. Colo. 2016) (same); *Ball Dynamic*, 2016 WL

12  10859782, at *9 (same); *Bachus v. Apishapa Land and Cattle Co.*, 615 P. 2d 42 (Colo. App.

13  1980) (finding plaintiff could proceed alternatively on claim of unjust enrichment in addition to

14  breach of contract). For these reasons, Plaintiff's Colorado unjust enrichment claims should not

15  be dismissed.

16  **F.  Plaintiff Has Standing To Seek Injunctive Relief**

17          Finally, Defendant argues that Plaintiff lacks standing to seek injunctive relief because

18  there are no allegations that Plaintiff intends to purchase another Watch in the future, or that

19  Apple is still selling the Series 2 Watches. Motion, at 24-25. That argument ignores Plaintiff's

20  allegation that he has not yet repaired his Watch because he would have to pay Apple for the

21  repairs, yet continue to "run[] the risk . . . [that the] repaired Watch also would be prone to the

22  same Defect." ¶ 48. So until Apple is enjoined from denying the existence of the Defect and

23  covering instances where the Defect manifests, Plaintiff cannot repair his Watch.

This allegation is sufficient to confer standing under *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018). Just as the Ninth Circuit in *Kimberly-Clark Corp.* found that "Davidson adequately alleged that she faces an imminent or actual threat of future harm due to Kimberly-Clark's false advertising" because "Davidson has alleged that she desires to purchase Kimberly-Clark's flushable wipes" but cannot rely on Kimberly-Clark's representations, Plaintiff here faces an imminent or actual threat of future harm due to Apple's misrepresentations because even though Plaintiff wants to repair his Watch, Plaintiff cannot rely on Apple's representations that the repaired Watch would be Defect-free or that any repeat manifestation of the Defect would be covered by Apple. *Kimberly-Clark Cop*, 889 F.3d at 971.[11]

## CONCLUSION

For the reasons set forth above, this Court should deny Apple's Motion to Dismiss and allow this case to proceed. Should this Court decide to grant any aspect of Apple's Motion, Plaintiff respectfully requests that the Court grant him leave to amend pursuant to Fed. R. Civ. P. 15(a). *See, e.g., AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F. 3d 946, 951 (9th Cir. 2006) ("Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'").

Dated: October 19, 2018               Respectfully submitted,

By: */s/ Kolin C. Tang*
Kolin C. Tang (SBN 279834)
SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
ktang@sfmslaw.com

---

[11] In contrast, in *Davidson v. Apple, Inc.*, 2017 WL 976048, at *7, this Court found that the complaint was "devoid of any allegations that the plaintiffs intended to repair their iPhones through "Apple's 'Multi-Touch Repair Program,'" so there were "no allegations that [p]laintiffs face[d] 'a real and immediate threat of injury.'"

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

James C. Shah
SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP
475 White Horse Pike
Collingswood, NJ 08107
Telephone: (856) 858-1770
Facsimile: (866) 300-7367
jshah@sfmslaw.com

John F. Edgar
Brendan M. McNeal
EDGAR LAW FIRM LLC
1032 Pennsylvania Ave.
Kansas City, MO 64105
Telephone: (816) 531-0033
Facsimile: (816) 531-3322
jfe@edgarlawfirm.com
bmm@edgarlawfirm.com

*Attorneys for Plaintiff Individually and on
Behalf of Himself and All Others Similarly
Situated*