DAVID R. SINGH (Bar No. 300840)
david.singh@weil.com
HONG-AN N. TRAN (Bar No. 267685)
an.tran@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

DAVID J. LENDER (*pro hac vice*)
david.lender@weil.com
ALLISON H. SEMAYA (*pro hac vice*)
allison.semaya@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Defendant
APPLE INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| KENNETH SCIACCA, on behalf of himself and all others similarly situated,<br><br>                              Plaintiff,<br><br>v.<br><br>APPLE, INC.,<br><br>                              Defendant. | Case No. 5:18-cv-3312-LHK<br><br>**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Date:      January 31, 2019<br>Time:      1:30 p.m.<br>Dept.:     Courtroom 8 – 4th Floor<br>Judge:    Honorable Lucy H. Koh |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.    PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED ......................... 2

    A.    PLAINTIFF'S FRAUD-BASED CLAIMS UNDER THE UCL (COUNT I) AND CLRA (COUNT II) SHOULD BE DISMISSED........................................ 2

        1.    Plaintiff Has Not Alleged Any Actionable Misrepresentation or Partial Representation...................................................................... 2

        2.    Plaintiff Has Failed to Identify the Purported Defect ................................. 4

        3.    Plaintiff's Allegations Fail to Establish Apple's Knowledge of the Purported Defect At the Time Plaintiff Purchased His Watch .................. 7

        4.    Plaintiff's Has Failed to Allege a Safety Issue............................................ 8

        5.    *Wilson's* "Safety Issue" Requirement is Still Good Law.......................... 10

    B.    PLAINTIFF'S UCL CLAIM (COUNT I) OTHERWISE FAILS AS A MATTER OF LAW (COUNT I) ....................................................... 11

        1.    Plaintiff Has Failed To Allege Any "Unfair" Acts Under the UCL ......... 11

        2.    Plaintiff Does Not Allege Any "Unlawful" Act by Apple....................... 12

    C.    IT IS UNDISPUTED THAT PLAINTIFF'S CLAIM FOR BREACH OF EXPRESS WARRANTY (COUNT III) IS TIME BARRED ............................. 13

    D.    PLAINTIFF DOES NOT OPPOSE DISMISSAL OF HIS CLAIM FOR BREACH OF IMPLIED WARRANTY (COUNT IV) ....................................... 13

    E.    PLAINTIFF'S MAGNUSON-MOSS WARRANTY ACT CLAIM (COUNT V) FAILS WITH HIS STATE LAW WARRANTY CLAIMS................................. 14

    F.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED. 14

    G.    PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF .............. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*,
No. 17-CV-03805-LHK, 2018 WL 1805516 (N.D. Cal. Apr. 16, 2018)..............................13

*Baba v. Hewlett-Packard Co.*,
No. C 09-05946 RS, 2011 WL 317650 (N.D. Cal. Jan. 28, 2011) ..........................................8

*Backhaut v. Apple, Inc.*,
74 F. Supp. 3d 1033 (N.D. Cal. 2014) (Koh, J.) .....................................................................11

*Berenblat v. Apple, Inc.*,
Nos. 08-4969 JF (PVT), 09-1649 JF (PVT), 2010 WL 1460297 (N.D. Cal.
Apr. 9, 2010) .............................................................................................................................8

*Bly–Magee v. California*,
236 F.3d 1014 (9th Cir. 2001)...................................................................................................6

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
631 F.3d 939 (9th Cir. 2011).....................................................................................................5

*Cholakyan v. Mercedes-Benz USA*,
LLC, 796 F. Supp. 2d 1220 (C.D. Cal. 2011) ..........................................................................3

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013) ........................................................5

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008), 534 F.3d ................................................................................14

*Collins v. eMachines, Inc.*,
202 Cal. App. 4th 249 (2011) .......................................................................................... 10, 11

*Elias v. Hewlett-Packard Co.*,
903 F. Supp. 2d 843 (N.D. Cal. 2012) ............................................................................... 9, 12

*Evans v. Maytag Aircraft Corp.*,
No. 16-CV-02264-RBJ, 2017 WL 1437296 (D. Colo. Mar. 14, 2017) ...................................4

*Falk v. Gen. Motors Corp.*,
496 F. Supp. 2d 1088 (N.D. Cal. 2007) ....................................................................................6

*GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*,
No. EDCV 15-04125VAP, 2016 WL 6562064 (C.D. Cal. Apr. 21, 2016) ..............................3

*Graham Hydraulic Power, Inc. v. Stewart & Stevenson Power, Inc.*,
   797 P.2d 835 (Colo. App. 1990) ........................................................................................ 13

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ............................................................................. 14

*Hodges v. Apple Inc.*,
   No. 13-CV-01128-WHO, 2013 WL 4393545 (N.D. Cal. Aug. 12, 2013)......................... 4, 12

*In re Adobe Sys., Inc. Privacy Litig*,
   66 F. Supp. 3d 1197 (N.D. Cal. 2014) ............................................................................... 12

*In re Apple In-App Purchase Litig.*,
   855 F. Supp. 2d 1030 (N.D. Cal. 2012) ............................................................................... 3

*In re Toyota Motor Corp.*,
   790 F. Supp. 2d 1152,1159 (C.D. Cal. 2011) ..................................................................... 6

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods.*
   *Liab. Litig.*,
   754 F. Supp. 2d 1208 (C.D. Cal. 2010) ............................................................................. 13

*Interbank Investments, LLC v. Eagle River Water & Sanitation Dist.*,
   77 P.3d 814 (Colo. App. 2003) ........................................................................................ 14

*John–Charles v. California*,
   646 F.3d 1243 (9th Cir. 2011)........................................................................................... 13

*Kirsopp v. Yamaha Motor Co.*,
   No. CV1400496BROVBKX, 2015 WL 11197829 (C.D. Cal. Jan. 7, 2015) ......................... 9

*Kona Enters., Inc. v. Estate of Bishop*,
   229 F.3d 877 (9th Cir.2000)............................................................................................. 11

*Morici v. Hashfast Technologies LLC*,
   No. 5:14-CV00087-EJD, 2015 WL 906005 (N.D. Cal. Feb. 27, 2015) ................................ 7

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................................................. 8

*Pac. Telesis Grp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
   No. C 98–2555 CRB, 1999 WL 155697 (N.D. Cal. Mar. 16, 1999) ................................... 11

*Palmer v. Apple Inc.*,
   No. 5:15-CV-05808-RMW, 2016 WL 1535087 (N.D. Cal.Apr. 15, 2016)........................... 12

*Philips v. Ford Motor Co.*,
   *No.* 14-CV-02989-LHK, 2015 WL 4111448 (N.D. Cal. July 7, 2015) ................................. 6

*Phillips v. Apple Inc.*,
No. 15-CV-04879-LHK, 2016 WL 5846992 (N.D. Cal. Oct. 6, 2016) (Koh, J.),
aff'd, 725 F. App'x 496 (9th Cir. 2018) ................................................................................ 15

*Punian v. Gillette Co.*,
No. 14-CV-05028-LHK, 2015 WL 4967535 (N.D. Cal. Aug. 20, 2015) ................................ 8

*Punian v. Gillette Co.*,
No. 14-CV-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ................... 4 , 5, 6, 8

*Rasmussen v. Apple Inc.*,
27 F. Supp. 3d 1027 (N.D. Cal. 2014) ................................................... 2 , 3, 4 , 11

*Rossetti Assocs., Inc. v. Santa Fe*,
125 Denver, LLC, No. 09–cv–0033–WJM–BNB, 2011 WL 83417
(D.Colo. March 4, 2011) ..................................................................................... 14

*Rutledge v. Hewlett-Packard Co.*,
238 Cal. App. 4th 1164 (2015) ....................................................................... 10, 11

*Shakur v. Schriro*,
514 F.3d 878 (9th Cir. 2008)............................................................................. 13

*T. K. v. Adobe Sys. Inc.*,
No. 17-CV-04595-LHK, 2018 WL 4003313 (N.D. Cal. Aug. 22, 2018) ............................ 15

*Vitt v. Apple Computer, Inc.*,
469 F. App'x 605 (9th Cir. 2012) ........................................................................ 4

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017)........................................................................... 10

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012).................................................................. 9 , 10, 11

1    I.    **INTRODUCTION**

2         Rather than oppose Apple's motion to dismiss Plaintiff's initial complaint, Plaintiff filed an

3    amended complaint.   But, as shown by Plaintiff's Opposition, the Amended Complaint[1] remains

4    deficient.  Plaintiff acknowledges that he used his Apple Watch without issue for 15 months—*i.e.*, three

5    months after the expiration of the relevant Limited Warranty—and that he thus cannot state a claim for

6    breach of express warranty (Count III).  Plaintiff also does not respond at all to Apple's argument that

7    Apple disclaimed any implied warranty and limited any not-disclaimed implied warranty to one-year.

8    Accordingly, Plaintiff's express and implied warranty claims (Count IV), and his derivative Magnuson-

9    Moss Warranty Act claim (Count V), should be dismissed with prejudice.

10         As for Plaintiffs' other claims, the factual allegations in his Amended Complaint simply do not

11   support them.  With respect to Plaintiff's claims for violations of the UCL (Count I) and CLRA (Count

12   II), the Amended Complaint does not allege any actionable affirmative misrepresentations or partial

13   representations requiring qualification.  For example, although Plaintiff's Opposition points to just a

14   single representation that the Watches "had resistance to water to 50 meters," Plaintiff does not allege

15   that his Apple Watch did not have resistance to water to 50 meters or that the issue with his Apple

16   Watch had anything to do with water resistance.  Nor does the Amended Complaint allege sufficient

17   facts to state a UCL and CLRA claims under an omission theory.  Indeed, aside from a circular

18   definition that the Defect is a "defect and/or flaw, which causes the screens on the Watches to crack,

19   shatter, or detach from the body of the Watch," the Amended Complaint does not identify, even

20   generally, what the supposed defect is, much less facts establishing Apple's knowledge of it at the time

21   Plaintiff purchased his Apple Watch in December 2016.  As for Plaintiff's unjust enrichment claim

22   (Count VI), Plaintiff acknowledges that, under Colorado law, a claim for unjust enrichment cannot

23   proceed where there is an enforceable contract between the parties that covers the same subject matter.

24   And, while Plaintiff attempts to invoke two narrow exceptions to this rule, neither exception applies.

25   And last, Plaintiff's contention that he has standing to seek injunctive relief based on the possibility

26   that he may seek to repair his Watch is untenable and unsupported by case law.

27

28

---

[1] All capitalized undefined terms herein shall have the meanings ascribed to them Apple's September 28, 2018 Amended Complaint.

1    Accordingly, and for the reasons set forth below and in Apple's Motion to Dismiss, Plaintiff's

2    Amended Complaint should be dismissed with prejudice.

3    **II.    PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED**

4        **A.    Plaintiff's Fraud-Based Claims under the UCL (Count I) and CLRA (Count II)
             Should Be Dismissed**

5

6        Plaintiff's Opposition acknowledges that Apple has not made any affirmative false statements.

7    Opp'n at 5.  Rather, Plaintiff's fraud-based claims appear to be premised on the theory that Apple made

8    partial representations about the Watches at Issue yet failed to disclose the alleged Defect.  But, as set

9    forth in Apple's Motion to Dismiss and below, Plaintiff's fraud theory against Apple fails for numerous

10   independent reasons:  First, the alleged "partial" representations by Apple are unrelated to the purported

11   Defect, or otherwise not actionable.  Second, Plaintiff has not identified with sufficient particularity

12   the defect that Apple failed to disclose.  Third, Plaintiff has not alleged plausible facts to support

13   Apple's awareness of the purported "Defect" at the time Plaintiff brought his watch.  And last, Plaintiff

14   has not sufficiently alleged a safety concern, which is required for post-warranty fraudulent omission

15   claims.  Each of these reasons alone is sufficient basis to dismiss Plaintiff's fraud-based claims.

16        **1.    Plaintiff Has Not Alleged Any Actionable Misrepresentation or Partial
                Representation**

17

18       Plaintiff argues that Apple's representations that the "Watches were objectively durable—*i.e.*,

19   the Watch had '[w]ater resistance to 50 meters'" are misleading because Apple did not also inform

20   purchasers that "the Watch may otherwise break as a result of the Defect."  Opp'n at 6.  Yet tellingly,

21   Plaintiff could not point to a single case which have found the types of promotional content alleged

22   here to be actionable.  Rather, the case that Plaintiff does cite—*Rasmussen v. Apple*—supports Apple's

23   motion to dismiss.

24       Indeed, the court in *Rasmussen* rejected the very same arguments that Plaintiff proffers here

25   based on analogous factual allegations.  In *Rasmussen,* the plaintiff asserted that he purchased the iMac

26   screen after viewing Apple's "promotional videos touting the display. . . ."  *Rasmussen v. Apple Inc*.,

27   27 F. Supp. 3d 1027, 1030-1031, 1039 (N.D. Cal. 2014).  However, after approximately 18 months,

28   half of Plaintiff's iMac's screen went dim.  *Id.*  Plaintiff alleged that "at the same time Apple was touting

1    the superior qualities of the iMac's display and the Mac's dependability more generally . . . Apple was

2    aware of a latent defect with those same screens." *Id.* at 1031.   Plaintiff also asserted that Apple's

3    advertising made numerous representations suggesting that the iMac display is designed for a long

4    productive life. *Id.*   Plaintiff further argued that the screen defect represented a material fact that was

5    "contrary to" those representations, and thus sufficient to state a claim under the CLRA.   But, the

6    *Rasmussen* court rejected plaintiff's arguments, holding that:

7    > [M]any statements do not relate to the longevity of the screen's performance, only to
     > the general quality of its display.   As to those that do, statements that the Mac is
8    > designed to 'last' or to have a 'long productive life' are equivalent to representations
     > that a product was 'built to last' that courts have found to be non-actionable . . . .
9    > ***Plaintiff has simply not alleged that Apple made any misrepresentations about
     > specific or absolute characteristics of the longevity of the 27–inch iMac that would
10   > constitute an actionable statement***."

11   *Id.* at 1042-1043 (emphasis added).   Accordingly, the court in *Rasmussen* found that the plaintiff failed

12   to allege a fraudulent misrepresentation claim.

13       Here, Plaintiff Sciacca's allegations regarding the purported misrepresentations are even more

14   deficient than those in *Rasmussen*.   Plaintiff fails to allege why the promotional material allegedly

15   reviewed and relied upon by Plaintiff is misleading, or may need to be "qualified."   Indeed, none of the

16   alleged promotional material relates to the durability or longevity of the Watches at Issue, much less

17   the screen.   Instead, the alleged statements all relate to specific technical features of the Series 2

18   Watches, such as "[b]uilt-in GPS," "water resistance to 50 meters," "lightning-fast dual-core

19   processor," "2x brighter display," "tracks all the ways you move throughout the day," etc. (Am. Compl.

20   ¶46); and Plaintiff does not allege that any of these technical features have anything to do with the issue

21   he allegedly experienced with his Apple Watch.[2]   And, even if Apple did represent that "the Watches

22

23   [2] Plaintiff's reliance on *GeoData Sys. Mgmt., Inc.* and *In re Apple In-App Purchase Litig* is thus misplaced.   In
     both of those cases, the omitted information directly related to the partial representation.   In *GeoData* the plaintiff
24   brought a common law fraud claim (as opposed to consumer fraud claim) against four defendants, alleging that
     the defendants' description of a patent as "our patent" was a fraudulent misrepresentation because only one of
25   the defendants actually owned the patent.   *See GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*,
     No. EDCV 15-04125VAP (JEMx), 2016 WL 6562064, at *12 (C.D. Cal. Apr. 21, 2016).   In *In re Apple In-App
26   Purchase Litig.*, the plaintiffs alleged that representations that certain children game apps were "free" or
     "nominal" were misleading because the children users could make purchases while using the app.   *See In re Apple
27   In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1033 (N.D. Cal. 2012).   Unlike in those cases, here Plaintiff does
     not allege that Apple's purported omission relates to its representation of the water resistance of the Apple Watch
28   (or to any other alleged partial representation by Apple).

were objectively durable" as Plaintiff contends (*see* Opp'n at 6),[3] courts have repeatedly found promotional statements regarding the durability of a product to be nonactionable.  *See Vitt v. Apple Computer, Inc*., 469 F. App'x 605, 607 (9th Cir. 2012) (finding statement that Apple laptop is "***durable***," "rugged" "built to withstand reasonable shock" to be non-actionable) (emphasis added); *Hodges v. Apple Inc*., No. 13-CV-01128-WHO, 2013 WL 4393545, at *3-4 (N.D. Cal. Aug. 12, 2013) (finding representation that an Apple laptop has "the world's most advanced notebook display" to be nonactionable); *see also Punian v. Gillette Co.* ("*Punian II*"), No. 14-CV-05028-LHK, 2016 WL 1029607, at *9 (N.D. Cal. Mar. 15, 2016) (holding that representations that consumers of batteries will always have access to power and can "trust" reliability of batteries to be nonactionable).

Thus, Plaintiff has not alleged any actionable misrepresentation or partial representation. *Rasmussen*, 27 F. Supp. 3d at 1043.

## 2.    Plaintiff Has Failed to Identify the Purported Defect

Relying on *Punian II*, another case cited in Apple's Motion to Dismiss, Plaintiff argues that his allegations of the alleged Defect meet the requirements of Rule 9(b) because he alleges and "'common experience' supports that 'a reasonable consumer expects and assumes that, when he/she purchases an Apple Watch purportedly designed for active wear and use, the Watch screen will not spontaneously crack, detach, or shatter when it is being used within its normal and/or expected range of operation. . . .'"  Opp'n at 9 (citing Amended Complaint).  Plaintiff's interpretation of *Punian II* is misguided.

As set forth in Apple's Motion to Dismiss, and acknowledged in Plaintiff's Opposition, in *Punian II*, this Court found that the general allegations of defect (*i.e,*. Duralock Batteries' potential "to fail, leak and/or damage Plaintiff's electronics"), like the ones that Plaintiff has alleged here (*i.e*., Watches at Issue's screen's potential to '"break, detach, or shatter"), are insufficient.  This Court laid out several reasons in support of this holding, each of which applies here:

First, and as acknowledged in Plaintiff's Opposition, this Court held that the plaintiff in *Punian II* failed to allege a defect because "although Plaintiff alleges that leakage is a 'defect' in Duralock

---

[3] In fact, Plaintiff identifies no affirmative statement by Apple that the Watches were "objectively durable."  At most, Plaintiff alleges that this was his extrapolation from other statements by Apple, but Plaintiff cites no holding that the failure to qualify an extrapolation can be actionable under the UCL or CLRA.

Batteries, Plaintiff does not allege that leakage is the result of any systematic design, technical, manufacturing, or other flaw present in all Duralock Batteries.  In fact, ***Plaintiff does not allege any cause*** for Duralock Batteries' potential to leak." *Punian II*, 2016 WL 1029607, at *13 (emphasis added).  Here, aside from Plaintiff's circular definition that the Defect is a "defect and/or flaw, which causes the screens on the Watches to crack, shatter, or detach from the body of the Watch," Opp'n at 1, Plaintiff has not alleged any cause for the screen of the Watches at Issue to "crack, shatter, or detach" or the existence of a design or manufacturing defect that would cause such alleged issues with the screen.

Further, this Court reasoned that the plaintiff in *Punian II* failed to allege a defect because he did "not allege any particular likelihood of leakage—for example, that Duralock Batteries regularly, often, or usually leak . . . .  Nor does Plaintiff allege that there is a significant, substantial, likely, or particular rate of failure for Duralock Batteries."  *Id.* at *11.  According to this Court, plaintiff's examples of other customer complaints were not sufficient to show the likelihood of leakage in the batteries, noting that the few complaints regarding the Duralock Batteries' potential to leak "do not indicate any particular rate or magnitude of Duralock Batteries' potential to leak, particularly in the absence of any allegations in the SAC about the likelihood of leakage." *Id.* at *13.  ("The Court notes that in *Carlson*, the district court found that the allegations that 'numerous' Duralock Batteries leaked over a period of years 'without any other data points, such as the total amount of batteries sold, or the leakage rates of comparable batteries sold by other manufacturers' did not support 'an inference that any substantial leakage problem existed.")  Here too, Plaintiff has not alleged any facts regarding the likelihood of the screen on the Watches at Issue to crack, shatter, or detach and his reliance on isolated customer complaints is likewise insufficient.

Moreover, this, Court also held that the plaintiff in *Punian II* failed to allege a defect because "Plaintiff's only allegation regarding customer expectations is that the Duralock guarantee misleads consumers into believing that Duralock Batteries have no potential to leak for ten years." *Id.* at *15.  According to the Court, "Plaintiff fails to allege that Duralock Batteries' unspecified potential to leak contravenes consumer expectations or that Defendants' failure to disclose the potential to leak is likely to deceive consumers." *Id.*  Here, Plaintiff relies on the boilerplate allegation that "a reasonable

consumer expects and assumes that, when he/she purchases an Apple Watch purportedly designed for active wear and use, the Watch screen will not spontaneously crack, detach, or shatter when it is being used within its normal and/or expected range of operation . . . ." Opp'n at 9. But, this conclusory allegation, which is unsupported by any plausible facts and should be disregarded, is insufficient to show how any consumer of a watch could be deceived into thinking that the screen of a watch "for active wear and use" could not be susceptible to damages to the screen.

In sum, like the plaintiff in *Punian II*, Plaintiff has not alleged a defect with any specificity. He has failed to identify what the defect is or even what part(s) and/or components of the Watches at Issue suffer(s) from the defect other than it is not related to the "swollen battery issue." And while Plaintiff attempts to argue that allegations that "detail the effects of the defect" are sufficient to meet the heightened Rule 9(b) standard,[4] Opp'n at 7, Plaintiff has failed to even do so. Indeed, Plaintiff cannot even allege a uniform manifestation and/or "effect" of the alleged Defect amongst users, but instead relies on the vague allegation that the Defect is a "defect and/or flaw which causes the screens on the Watches to crack, shatter, or detach from the body of the Watch." Am. Compl. ¶ 3, *see also* Opp'n at 7 ("while the screen on Plaintiff's Watch unexpectedly detached from the Watch's body shortly after he removed the Watch from its charger, other consumers reported manifestation of the Defect in the form of the 'appearance of hairline cracks running vertically and horizontally along the Perimeter of their Watch screens.'"). Plaintiff has had ample opportunity to plead the purported defect, but clearly cannot do so, and should not be allowed to proceed past the motion to dismiss stage to engage in a fishing expedition in the hopes of finding a theory. *See Bly–Magee v. California*, 236 F.3d 1014, 1018

---

[4] None of the cases cited by Plaintiffs stand for the proposition that descriptions of a defect "which detail the effects of the defect" is sufficient to meet the heightened pleading standard of Rule 9(b). And, all the cases involved significantly detailed allegations of the defect at issue. *See Philips v. Ford Motor Co., No.* 14-CV-02989-LHK, 2015 WL 4111448, at *1 (N.D. Cal. July 7, 2015) (alleging that the car's "Electronic Power Assisted Steering ('EPAS') system . . . replaces the traditional hydraulic-assist power steering pump and is comprised of a power steering control motor, electronic control unit, torque sensor, and steering wheel position sensor" but "suffers from a systemic defect that renders the system prone to sudden and premature failure . . . .") (internal citation omitted); *In re Toyota Motor Corp.*, . 2d 1152,1159 (C.D. Cal. 2011) (alleging "an overarching defect . . . which may be the result of many root causes, but which could be ameliorated by a fail-safe design feature such as an effective brake-override system or ignition kill switch" and including descriptions of defect such as "a smaller gap between accelerator pedal and brake pedal on certain models, and corrosion or carbon build up resulting in a 'stuck' throttle body and SUA") (internal citation omitted); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007) (alleging that speedometer of car is "prone to fail and to read a different speed than the vehicle's actual speed . . . .").

(9th Cir. 2001) (requirements of Rule 9(b) serve "'to deter the filing of complaints as a pretext for the discovery of unknown wrongs . . . and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis'"); *Morici v. Hashfast Technologies LLC*, No. 5:14-CV00087-EJD, 2015 WL 906005, at *3 (N.D. Cal. Feb. 27, 2015) (heightened pleading "'requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate'").

### 3.   Plaintiff's Allegations Fail to Establish Apple's Knowledge of the Purported Defect At the Time Plaintiff Purchased His Watch

Plaintiff contends that he has alleged many more facts than the mere five (5) ambiguous customer complaints which may not even relate to the Watches at Issue[5] to support Apple's knowledge of the purported Defect before or at the time Plaintiff purchased his Watch, citing to certain paragraphs in his Amended Complaint.  Opp'n at 10 (citing to paragraphs 25, 42, 52-53, and 55 of Amended Complaint).  But, notably, none of these cited paragraphs alleges *anything*, much less plausible facts, about Apple's knowledge of the purported Defect before or at the time Plaintiff purchased his Watch:

- Amended Complaint ¶ 25 ("Starting in September 2016, Apple discontinued the manufacture of the First Generation Apple Watch and began to produce and sell both the Series 1 and Series 2 Watches.  Apple still sells the Series 1 Watch, but discontinued the manufacture of the Series 2 Watch in September 2017.").

- Amended Complaint ¶ 42 ("Upon information and belief, in April 2018, Apple extended its Limited Warranty from one year to three years for all 42mm-sized Series 2 Models with swollen batteries.  Apple did not admit a general defect in Series 2 Watches and has refused to extend the Limited Warranty to defective Watches that it believes do not contain a

---

[5] None of these five complaints specify the model of the watch and thus, it is unclear whether any of these complaints are about the Watches at Issue (as opposed to the First Generation watches, which Plaintiff no longer alleges contain the purported Defect).  Moreover, it is unclear whether the five complaints relate to the alleged Defect or some other issue, like the "swollen battery" issue that the Amended Complaint expressly does not cover.  *See* Am. Compl. ¶¶ 1, 24, 25, 50.  Plaintiff's contention that the Court must somehow infer and/or accept that these complaints necessarily relate to the Watches at Issue (as opposed to the First Generation Watch) and/or relate to the purported Defect (as opposed to some other cause, such as the swollen battery issue, wear and tear, and/or user abuse) is unfounded.  Plaintiff never alleges that these complaints relate to the Watches at Issue as Plaintiff only alleges:  "The quotes below from Apple's 'Communities' forum are representative of consumers' experiences."  *See* Am. Compl. ¶ 50.  In fact, this Court has specifically found such obscure customer complaints to be insufficient.  *See Punian II*, 2016 WL 1029607, at *12 ("For these 13 complaints, it is not clear whether the customers are complaining about Duralock Batteries, or about other batteries sold by Defendants . . . .  If the customer complaint does not specify the size of the battery, the Court has no basis to infer that the complaint is about Duralock Batteries, rather than batteries in other sizes.").

1    swollen battery.").

2    • Amended Complaint ¶ 52-53 ("The pervasiveness of the Defect is such that owners of Apple
3    Watches with detached screens may purchase, from online vendors, adhesives designed and
     marketed specifically to reattach Apple Watch screens . . . . Although Apple has
4    acknowledged a swollen battery issue in certain First Generation Watches and Series 2
     Watches, it has flatly refused to acknowledge the existence of the Defect, even though the
5    Defect is present in every series of Watches.  Nevertheless, consumers' complaints at Apple
     Stores, to Apple Support, and online leave no doubt that Apple is fully aware of the Defect.
6    Even still, Apple has provided no notice to consumers.").

7    • Amended Complaint ¶ 55 ("Although aware of the Defect in the Watches, Apple has
     actively concealed the Defect from Plaintiff and the Class at the time of purchase and every
8    point thereafter . . . .").

9            Thus, and as stated in Apple's motion to dismiss, Plaintiff's allegations, which are based solely

10   on a handful of ambiguous customer complaints about unspecified products, are insufficient to establish

11   Apple's knowledge for purposes of Plaintiff's omission-based claim at the time Plaintiff purchased his

12   Watch.  *See, e.g.*, *Berenblat v. Apple, Inc.*, Nos. 08-4969 JF (PVT), 09-1649 JF (PVT), 2010 WL

13   1460297, at *9 (N.D. Cal. Apr. 9, 2010) (complaints posted on the defendant's website were

14   insufficient to show that the defendant had knowledge of an alleged defect); *Baba v. Hewlett-Packard

15   Co.*, No. C 09-05946 RS, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011) ("Awareness of a few

16   customer complaints . . . does not establish knowledge of an alleged defect."); *Punian v. Gillette Co.*,

17   No. 14-CV-05028-LHK, 2015 WL 4967535, at *10 (N.D. Cal. Aug. 20, 2015) ("Even under the less

18   stringent standard of Rule 8, the Court finds that Plaintiff does not sufficiently allege knowledge of any

19   product defect on the part of Defendants.  Plaintiff's sole allegation regarding Defendants' knowledge

20   of a defect is that consumers filed 'numerous complaints' with Defendants."); *Oestreicher v. Alienware

21   Corp.*, 544 F. Supp. 2d 964, 974 n.9 (N.D. Cal. 2008) ("Random anecdotal examples of disgruntled

22   customers posting their views on websites at an unknown time is not enough to impute knowledge

23   upon defendants.  There are no allegations that Alienware knew of the customer complaints at the time

24   plaintiff bought his computer.").

25                    **4.        Plaintiff's Has Failed to Allege a Safety Issue**

26           Because Plaintiff's claim is brought after the expiration of the Limited Warranty and he was

27   unable to allege an affirmative misrepresentation (*see supra* Section 1), Plaintiff's omission-based

28   claims are only actionable if he is able to establish a duty to disclose based on an unreasonable safety

1   hazard.  *See Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136, 1141-42 (9th Cir. 2012) (". . . a

2   manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative

3   misrepresentation or a safety issue.") (internal citation omitted).  To establish a duty to disclose based

4   on a safety issue, a plaintiff must allege, a "sufficient nexus" between the alleged defect and the safety

5   issue. *Id.* at 1143–44.

6          Plaintiff argues that he has alleged a sufficient nexus between the alleged Defect and the

7   purported safety issue because "the Watch Defect's safety hazard is obvious and plausible."  Opp'n at

8   14.  Attempting to distinguish *Wilson* and *Elias II*, Plaintiff contends that "[i]f the Defect causes the

9   'screens on the Watches to crack, shatter, or detach from the body of the Watch" at any time [an

10  assumption built into Plaintiff's circular definition], it is 'common sense' that a purchaser may be

11  wearing the Watch at the time the Defect manifests, thus resulting in personal injury."  Opp'n at 14.

12  Plaintiff's simplistic argument misstates the proper legal standard.

13         Contrary to Plaintiff's assertion, it is not enough that it is "plausible" for a defect to result in a

14  safety hazard.  Rather, "Plaintiffs still must allege a sufficient causal nexus between the alleged defect

15  and the safety hazard."  *Kirsopp v. Yamaha Motor Co*., No. CV1400496BROVBKX, 2015 WL

16  11197829, at *10 (C.D. Cal. Jan. 7, 2015) ("And while Plaintiffs allege that engine failure has caused

17  deaths in the past and that it could cause loss of steering or people and things to be thrown forward,

18  Plaintiffs do not plead any facts indicating how the alleged design defect . . . causes these safety

19  hazards.  Without this causal nexus, the Court cannot conclude that the alleged defect presents an

20  unreasonable safety hazard giving rise to a duty to disclose.") (internal citation omitted).  The Amended

21  Complaint is devoid of any factual allegations of how the alleged Defect causes the safety concern.

22  Rather, the Amended Complaint merely includes a single allegation that the Defect "poses a significant

23  safety hazard to consumers, as it has caused a number of putative Class members to suffer cuts and

24  burns in connection with the screens cracking, shattering and/or detaching from the body of the

25  Watches." Am. Compl. ¶ 9.

26         Further, to the extent that Plaintiff is alleging that the purported "safety concern" is due to

27  customers wearing a watch with a cracked, shattered or detached screen, this is a potential risk that

28  could occur absent any alleged Defect, due to possible normal wear and tear and/or user abuse, and of

which Apple expressly warns about.[6]  The Ninth Circuit has held that this type of purported "safety risk" is insufficient to trigger a duty to disclose.  Specifically, the Ninth Circuit has held that "the nature of the alleged defect as one of accelerated timing rather than the manifestation of a wholly abnormal condition weighs against its characterization as 'unreasonable.'"  *Williams v. Yamaha Motor Co*., 851 F.3d 1015, 1029 (9th Cir. 2017) ("We further note that the standard is one of an 'unreasonable' safety risk.  The loss of steering power, while plausibly hazardous, is a potential boating condition of which Yamaha expressly warns consumers" and "[w]ere we to conclude that Appellants' allegations of premature but otherwise normal wear and tear plausibly establish an unreasonable safety hazard, we would effectively open the door to claims that all of Yamaha's outboard motors eventually pose an unreasonable safety hazard."); *see also Wilson,* 668 F.3d at 1141–42 (acknowledging that unless liability for failure to disclose a defect is limited to unreasonable safety risks, "the failure of a product to last forever would become a 'defect,' a manufacturer would no longer be able to issue limited warranties, and product defect litigation would become as widespread as manufacturing itself" (internal quotation marks and alteration omitted)).

Thus, Plaintiff's allegation that consumers can suffer cuts or burns "in connection with the screens cracking, shattering and/or detaching from the body of the Watches" is insufficient to establish an unreasonable safety risk triggering a duty to disclose.

### 5. *Wilson's* "Safety Issue" Requirement is Still Good Law

As a last resort, Plaintiff argues that he need not allege a safety issue despite the established Ninth Circuit holding in *Wilson* that "[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." 668 F.3d at 1141; *cf.* Opp'n at 14-15.  Plaintiff points to two California Court of Appeals cases, *Rutledge v. Hewlett-Packard Co*., 238 Cal. App. 4th 1164 (2015) and *Collins v. eMachines, Inc*., 202 Cal. App. 4th 249, 255 (2011).  But neither of these cases discuss the safety issue requirement in the context of post-warranty obligations,

---

[6] Apple expressly instructs users that continued use of a damaged Apple Watch, such as one with a cracked screen, may cause injury.  *See* Apple Watch User Guide, available at: https://support.apple.com/guide/watch/important-safety-information-apdcf2ff54e9/watchos ("Don't use a damaged Apple Watch, such as one with a cracked screen or case, visible liquid intrusion, or a damaged band, as it may cause injury.").

1    and notably, the language cited in Plaintiff's Opposition is silent on this point.

2         In any event, as other courts in this District have held, "the Court is bound by *Wilson* unless

3    and until it is clear that *Daugherty* was wrongly decided or interpreted." *See Rasmussen v. Apple Inc*.,

4    27 F. Supp. 3d 1027, 1036 (N.D. Cal. 2014) ("The Court is not free to deviate from the Ninth Circuit's

5    construction of California law in *Wilson* absent a subsequent interpretation from California's courts

6    that the interpretation was incorrect."); *see also Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877,

7    884 n.7 (9th Cir.2000) (noting that a Ninth Circuit decision on state law "remains binding in the Ninth

8    Circuit"); *Pac. Telesis Grp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. C 98–2555 CRB, 1999

9    WL 155697 (N.D. Cal. Mar. 16, 1999) ("The Court is not aware of any authority, however, that permits

10   a district court to disregard the ruling of its circuit on the ground that the district court believes the

11   decision is incorrect.").[7]

12       **B.    Plaintiff's UCL Claim (Count I) Otherwise Fails As A Matter Of Law (Count I)**

13            **1.    Plaintiff Has Failed To Allege Any "Unfair" Acts Under the UCL**

14        In his Opposition, "Plaintiff asserts that Apple's misconduct is 'unfair' under the UCL's

15   'balancing test.'" Opp'n at 17.  But, not surprisingly, Plaintiff could not point to any factual allegations

16   in his Amended Complaint to show conduct by Apple that is "immoral, unethical, oppressive,

17   unscrupulous" or substantially injurious to consumers. *Backhaut v. Apple, Inc*., 74 F. Supp. 3d 1033,

18   1050-51 (N.D. Cal. 2014) (Koh, J.) (holding that plaintiff had failed to satisfy the "balancing test"

19   where Plaintiffs had "failed to plead the details of Apple's alleged fraudulent conduct with sufficient

20   particularity and failed to plead actual reliance . . . .").  Rather, Plaintiff simply argues that he has

21   sufficiently alleged "unfair" conduct because "he and members of the putative Class overpaid for the

22   Watches, and run the risk of future harm even if they repair their Watches."  Opp'n at 17 (citing Am.

23   Compl.).  Again, such vague allegations, particularly when they fail to identify the purported defect,

24   are insufficient to meet the "balancing test" of the UCL's "unfair prong."

25

26   [7] Plaintiff still fails to state a claim even under the formulation of the duty to disclose advanced by the California
     Court of Appeals in *Rutledge* and *Collins*.  Plaintiff contends that his fraud-based claims are based on his
27   allegation that the defendant made partial representations that are misleading because some other material fact
     has not been disclosed (*see* Opp'n at 4) —but as discussed above (*see supra* Section 1), Plaintiff failed to allege
28   any actionable and/or misleading partial representations by Apple.

1    Equally unsound is Plaintiff's reliance on *In re Adobe Sys., Inc. Privacy Litig*, 66 F. Supp. 3d

2   1197 (N.D. Cal. 2014), which is inapposite to this case here.  Unlike here, the plaintiffs in *In re Adobe*

3   specifically alleged that Adobe violated the "unfair prong" of the UCL by failing to adequately protect

4   their customers' sensitive personal information; and specifically that Adobe's security practices were

5   deeply flawed and did not conform to industry standards, in violation of California's Customer Records

6   Act.  *Id*. at 1206.  Plaintiffs also alleged that they had to purchase additional credit monitoring services

7   as a result of the data breach.  *Id*. at 1207.  And, Adobe's objection was not that the plaintiffs had not

8   sufficiently alleged facts to support unfair conduct by Adobe.  Rather, Adobe argued that Plaintiffs did

9   not allege any injuries stemming from Adobe's allegedly unfair conduct "in the precise paragraph of

10   the Complaint asserting a claim under the 'balancing test.'"  *Id.* at 1226-1227.  Thus, this Court rejected

11   Adobe's arguments because "*[e]lsewhere in the Complaint*, Plaintiffs alleged that Adobe's conduct

12   placed Plaintiffs at a substantial risk of future harm [having their personal information exposed] and

13   caused Plaintiffs to overpay for Adobe products and services" and found that "Plaintiffs have set forth

14   enough factual allegations of injury to bring a claim under the 'balancing test.'"  *Id.* at 1227 (emphasis

15   added).

16    Here, Plaintiff has not alleged *anywhere* in the Amended Complaint conduct by Apple that is

17   immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  Thus, without

18   sufficient allegations of wrongdoing, Plaintiff has failed to adequately allege any "unfair" business

19   practice by Apple.  *See Palmer v. Apple Inc.,* No. 5:15-CV-05808-RMW, 2016 WL 1535087 at *7

20   (N.D. Cal.Apr. 15, 2016) ("Without additional allegations of wrongdoing, it is hard to see how Apple's

21   failure to disclose the details of how the iPhone 5 switched off its Wi-Fi capability to improve battery

22   life was 'immoral, unethical, oppressive, or unscrupulous.'"); *see also Elias v. Hewlett-Packard Co*.,

23   903 F. Supp. 2d 843, 858–59 (N.D. Cal. 2012).

24       **2.       Plaintiff Does Not Allege Any "Unlawful" Act by Apple**

25    Because Plaintiff has failed to allege any actionable claim against Apple, Plaintiff has failed to

26   adequately plead a violation of the "unlawful" prong.  *See Palmer*, 2016 WL 1535087, at *6; *see also*

27   *Hodges v. Apple Inc*., 2013 WL 4393545, at *6 ("Because [Plaintiff] fails to plead with particularity

28   how Apple violated any statute, he also fails to adequately plead a violation under the UCL's 'unlawful'

prong."); *Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*, No. 17-CV-03805-LHK, 2018 WL 1805516, at *13 (N.D. Cal. Apr. 16, 2018) (dismissing UCL claim to the extent it is derivative of other claim dismissed in the same order).

### C.     It is Undisputed that Plaintiff's Claim for Breach of Express Warranty (Count III) is Time Barred

Plaintiff concedes that "he does not fall within the one-year warranty period set forth in Apple's Limited Warranty" and that "[f]or warranties like Apple's, "'[t]he general rule is that an express warranty has no affect after the applicable time period has elapsed.'" Opp'n at 19-20 (citing *Marchante v. Sony Corp. of Am., Inc*., 801 F. Supp. 2d 1013, 1020 (S.D. Cal. 2011). Accordingly, Plaintiff's claim for breach of express warranty should be dismissed with prejudice.[8]

### D.     Plaintiff Does Not Oppose Dismissal of His Claim for Breach of Implied Warranty (Count IV)

Notably absent from Plaintiff's Opposition is any reference to his claim for breach of implied warranty. Because Plaintiff does not oppose dismissal of his claim for breach of implied warranty, that claim is abandoned and should be dismissed with prejudice. *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (litigants waive arguments by failing to raise them in an opposition to a motion to dismiss); *accord John–Charles v. California*, 646 F.3d 1243, 1247 n.4 (9th Cir. 2011) (holding party

---

[8] Plaintiff suggests in a footnote that he "can amend the Complaint to include one or more plaintiffs whose Watch manifested the defect within the warranty period and, nevertheless, was denied warranty coverage by Apple." *Id*. Plaintiff knew that Apple was arguing that the express warranty claim was time-barred before filing their Amended Complaint, but Plaintiff did not address this deficiency in the Amended Complaint. Accordingly, the Court need not provide Plaintiff another opportunity to cure. Further, even if Plaintiff's counsel could recruit an additional plaintiff whose Watch manifested the defect within the warranty period, such additional plaintiff's express warranty claim would still be deficient. As set forth in Apple's Motion to Dismiss, the Limited Warranty only warrants "against defects in materials and workmanship," Mot. At 17, and, given Plaintiff's allegation of the defect across multiple models of Apple Watch, the Court can fairly infer that Plaintiff is alleging a design defect rather than a manufacturing defect. Even if the Court does not infer a design defect, the Amended Complaint does not allege a materials or workmanship defect and thus fails to allege a breach of the Limited Warranty. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig*., 754 F. Supp. 2d 1208, 1222 (C.D. Cal. 2010) (finding that in order to sufficiently plead an express warranty claim for a defect in materials and workmanship, a plaintiff needs to "identify/explain how the [product] either deviated from [defendant's] intended result/design or how the [product] deviated from other seemingly identical [product] models.") (emphasis in original) (alterations in original)*; see also Graham Hydraulic Power, Inc. v. Stewart & Stevenson Power, Inc.*, 797 P.2d 835 (Colo. App. 1990) (finding no breach of the express warranty because the warranty only protected against defects in materials or workmanship). And, Plaintiff's reliance on *Cholakyan v. Mercedes-Benz USA*, LLC, 796 F. Supp. 2d 1220, 1237, n.60 (C.D. Cal. 2011) is misplaced because unlike in *Cholakyan*, nowhere in the Amended Complaint does Plaintiff alleges that the purported Defect is a manufacturing defect.

1  "failed to develop any argument on this front, and thus has waived it."); *Hadley v. Kellogg Sales Co*.,

2  243 F. Supp. 3d 1074, 1100 (N.D. Cal. 2017) (finding that plaintiff waived claim by failing to defend

3  the claim in opposition to a motion to dismiss).

**E.      Plaintiff's Magnuson-Moss Warranty Act Claim (Count V) Fails with His State Law Warranty Claims**

6          As stated in Apple's Motion to Dismiss, Plaintiff's Magnuson-Moss Warranty Act claim is

7  derivative of his express and implied warranty claims.  Because Plaintiff concedes that he has not and

8  cannot allege a claim for breach of express or implied warranty, his claim under the Magnuson-Moss

9  Warranty Act should also fail.  *See Clemens v. DaimlerChrysler Corp*., 534 F.3d 1017, 1022 (9th Cir.

10  2008), 534 F.3d at 1022 ("[D]isposition of the state law warranty claims determines the disposition of

11  the Magnuson–Moss Act claims.").

**F.      Plaintiff's Unjust Enrichment Claim Should be Dismissed**

13         Plaintiff attempts to invoke two narrow exceptions to the "well-settled" principle "that a claim

14  for unjust enrichment cannot proceed in the face of a valid, enforceable contract between the parties

15  that covers the subject matter of the unjust enrichment claim." *Evans v. Maytag Aircraft Corp*., No.

16  16-CV-02264-RBJ, 2017 WL 1437296, at *6 (D. Colo. Mar. 14, 2017).  The first exception, which

17  permits an implied quasi-contract claim covering conduct outside the scope of the express contract,

18  does not apply here because the Limited Warranty covers the same subject matter as the unjust

19  enrichment claim, thereby precluding any implied contract. *See Interbank Investments, LLC v. Eagle

20  River Water & Sanitation Dist*., 77 P.3d 814, 816 (Colo. App. 2003) (holding that an express contract

21  supersedes and precludes any implied contract).  The second exception, which permits an implied

22  quasi-contract claim if "the party will have no right under an enforceable contract," *id.*, only applies

23  where there is no enforceable contract, which Plaintiff does not and cannot allege here. *See Rossetti

24  Assocs., Inc. v. Santa Fe*, 125 Denver, LLC, No. 09–cv–0033–WJM–BNB, 2011 WL 834177, at *7

25  (D.Colo. March 4, 2011) ("Colorado courts do not base their determination on the adequacy of the

26  remedy under an express contract").  *See id*.  Thus, dismissal of the unjust enrichment claim is

27  warranted because there is a valid, enforceable warranty between the parties, covering the subject

28  matter of the unjust enrichment claim, and neither of the narrow exceptions apply.

### G.   Plaintiff Lacks Standing to Seek Injunctive Relief

Plaintiff argues that he has standing to seek relief because he has alleged that "he has not yet repaired his Watch because he would have to pay Apple for the repairs, yet continue to run the risk that the repaired Watch also would be prone to the same Defect."  Opp'n at 24.  Such contention is far from the "sufficient likelihood" of concrete and particularized harm required to establish standing.  *Phillips v. Apple Inc*., No. 15-CV-04879-LHK, 2016 WL 5846992, at *6 (N.D. Cal. Oct. 6, 2016) (Koh, J.), aff'd, 725 F. App'x 496 (9th Cir. 2018).  Indeed, Plaintiff has wholly failed to adequately allege a "real and immediate threat of repeated injury" in the future, as is required to establish standing to seek injunctive relief.  *Chapman v. Pier 1 Imports (U.S.) Inc*., 631 F.3d 939, 946 (9th Cir. 2011).  This is particularly true because without identifying what the purported defect is, Plaintiff cannot establish an imminent risk of injury.  For example, if it was a limited manufacturing defect, there would be no risk of future injury if the product is repaired.

And, Plaintiff's vague allegation that "***[i]n the event*** that [he] decides to have the repair done, he (as do other members of the Class) would still run the risk of future harm as the repaired Watch also would be prone to the same Defect described herein" (Am. Compl. ¶ 48) (emphasis added) is far from demonstrating a future injury that is "certainly impending."  *See T. K. v. Adobe Sys. Inc*., No. 17-CV-04595-LHK, 2018 WL 4003313, at *4 (N.D. Cal. Aug. 22, 2018) ("To demonstrate constitutional standing for injunctive relief, which is a prospective remedy, the threat of injury must be actual and imminent, not conjectural or hypothetical.") (*citing Davidson v. Kimberly-Clark Corp*., 889 F.3d 956, 966 (9th Cir. 2018)).  As such, because this Court has found that "allegations of possible future injury are not sufficient" to confer standing to seek injunctive relief, Plaintiff's demand for injunctive relief should be dismissed.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 133 S. Ct. 1138, 1141, 185 L. Ed. 2d 264 (2013).

1    Dated:  November 2, 2018                    Respectfully submitted,

2                                                WEIL, GOTSHAL & MANGES LLP

3                                                By:  _/s/ David R. Singh_____
                                                      DAVID R. SINGH

4                                                Attorneys for Defendant APPLE INC.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28